UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————x

AVA ACUPUNCTURE P.C., OKSLEN ACUPUNCTURE P.C. )
Individually and as Assignee of Leona Deleston, MODEL SUPPLY )
INC. and KINGS COUNTY CHIROPRACTIC P.C.,          )      08 cv 5650 (SAS)
                                                   )
                  Plaintiffs,                      )      **AFFIDAVIT OF**
                                                   )      **RAYMOND J.**
                  -against-                        )      **ZUPPA JR.**
                                                   )
STATE FARM MUTUAL AUTOMOBILE INSURANCE            )      **ECF CASE**
COMPANY, AUTOONE INSURANCE COMPANY, GENERAL       )
ASSURANCE COMPANY, ONE BEACON INSURANCE           )
COMPANY, MCDONNELL& ADELS P.C., MELLI GUERIN &    )
WALL P.C., KATTEN MUCHIN ROSENMAN LLP, RIVKIN     )
RADLER LLP, ISEMAN CUNNINGHAM RIESTER & HYDE      )
LLP, NATIONAL INSURANCE CRIME BUREAU, ERIC R.     )
DINALLO SUPERINTENDENT OF INSURANCE STATE OF      )
NEW YORK and THE JOHN DOE INSURANCE COMPANIES     )
                                                   )
                  Defendants.                      )
————————————————————————————x

STATE OF NEW YORK   )
                    ) SS.:
COUNTY OF KINGS     )

RAYMOND J. ZUPPA JR., being duly sworn, deposes and says:

1.    I am admitted to this Court Pro Hac Vice solely for purposes of this Motion to Remand this case. I am the Principal in the Zuppa Firm PLLC attorney for the Plaintiffs in this matter. I have personal knowledge of the facts set forth in this Affidavit. I respectfully submit this Affidavit in support of Plaintiffs' motion for remand of this law suit to the forum in which it was commenced and to which it belongs – the Supreme Court of the State of New York, County of New York.

2.    This action arises out of the Defendants' concerted, brazen and illegal efforts to defraud New York medical providers and their Assignor New York State citizens out of payment

for medical treatment under New York's No Fault Laws. This fraud is perpetrating by wanton violations of a plethora of Insurance Regulations and other laws including New York State Penal Laws.

3. On June 2, 2008, the Plaintiffs filed a Summons and Class Action Complaint ("Complaint") in the Supreme Court of the State of New York, County of New York. A true and correct copy of the Complaint is annexed at Exhibit A to the Defendants' Notice of Removal.[1]

4. The undersigned has sent the correspondences to all the Defendants called for in the Court Rules Section III. B Motions Not Requiring a Pre-Motion Conference. The Plaintiffs have discontinued against Defendants Katten Muchin Rosenman LLP, Rivkin Radler LLP, Iseman Cunningham Riester & Hyde, LLP and Melli, Guerin & Wall P.C. pursuant to the applicable rules. The Caption will be amended at the appropriate time.

5. The bulk of the Defendants were served on June 2, 2008 and June 3, 2008, with only one Defendant being served on June 9, 2008 (Iseman).

6. On June 23, 2008 the Defendants State Farm Mutual Automobile Insurance Company, Melli Guerin & Wall P.C. and Katten Muchin Rosenman LLP filed a Notice of Removal of the action to the United States District Court, Southern District of New York. (*See* Notice of Removal at Exhibit 1 of this Affidavit)

7. As set forth in detail in the accompanying Memorandum of Law and the Affidavit of Eva Gaspari Esq. (annexed at Exhibit 2) the Defendants have failed to offer competent proof to support their conclusory assertion that the Five Million ($5,000,000.00) amount-in-controversy requirement under 28 U.S.C. Section 1332(d) has been satisfied. Consequently, Defendant has

---

[1] It would appear to a first time observer that the Court, the District and the people at ECF are concerned about volume of paper and electronic filing. As such the undersigned refers to the extremely large Complaint already filed as part of the Defendants' Notice of Removal.

failed to discharge its burden of establishing this Court's subject matter jurisdiction to preside over this case.

8.    In addition this matter falls under the "local controversy" exception to CAFA provided for in 28 U.S.C. Section 1332(d) (4).    Specifically, greater than two-thirds of the members of the proposed classes in the aggregate are citizens of the State of New York – in fact it is virtually 100%; at least one defendant – we have four – is a defendant from whom significant relief is sought, whose alleged conduct forms a significant basis for the claims asserted and is a citizen of the State of New York; principal injuries – in fact virtually all injuries – that were caused by the conduct of the Defendants were incurred in the State of New York and; there has definitely never been a similar class action filed in the last three years or probably ever.

9.    For the reasons stated above and in the accompanying Memorandum of Law and Affidavit of Eva Gaspari I respectfully submit that pursuant to 28 U.S.C. Section 1447(c) this case should be remanded to the Supreme Court of the State of New York, County of New York, and that the Plaintiff should be awarded just costs and actual expenses, including attorneys' fees incurred as a result of Defendants' improper removal of the action to this Court.

_____
RAYMOND J. ZUPPA JR.

Sworn to before me this
21st day of July, 2008

_____
NOTARY PUBLIC

James A. Hand
Notary Public, State of New York
No. 01HA6117919
Qualified in Kings County
Commission Expires November 01, 20__

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

AVA ACUPUNCTURE P.C., OKSLEN
ACUPUNCTURE P.C., Individually and as Assignee
of Leona Deleston, MODEL SUPPLY INC. and
KINGS COUNTY CHIROPRACTIC P.C.,

JUDGE SCHEINDLIN

08 CV 5650

Docket No.: _____

Plaintiffs,

-against-

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, AUTOONE INSURANCE
COMPANY, GENERAL ASSURANCE COMPANY,
ONE BEACON INSURANCE COMPANY,
MCDONNELL & ADELS P.C., MELLI GUERIN &
WALL P.C., KATTEN MUCHIN ROSENMAN LLP,
RIVKIN RADLER LLP, ISEMAN CUNNINGHAM
RIESTER & HYDE LLP, NATIONAL INSURANCE
CRIME BUREAU, ERIC R. DINALLO,
SUPERINTENDENT OF INSURANCE STATE OF
NEW YORK and THE JOHN DOE INSURANCE
COMPANIES,



Defendants.

------------------------------------------------------------X

## NOTICE OF REMOVAL

Defendants State Farm Mutual Automobile Insurance Company ("State Farm"), Melli,

Guerin & Wall P.C. and Katten Muchin Rosenman LLP (collectively the "Removing

Defendants"), hereby remove the above-captioned action from the Supreme Court of the State of

New York, County of New York, to the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453 and respectfully states:

1.      This action ("Action") was commenced by Plaintiffs in the Supreme Court of the

State of New York, County of New York, on or about June 2, 2008 under Index No. 601655/08.

Annexed hereto as Exhibit "A" is a copy of the Summons and Complaint (the "Complaint").

Exhibit "A" constitutes all the process, pleadings, and orders that have been filed in the Action to date.

2. This Action is of a civil nature in which the Plaintiffs seek declaratory and injunctive relief against certain No-Fault insurers: State Farm, Auto-One Insurance Company, General Assurance Company, and One Beacon Insurance Company (the three companies referred to in the Complaint as the "One Beacon Group") (collectively with State Farm referred to hereinafter as the "Insurance Company Defendants"). Plaintiffs also seek mandamus and injunctive relief against the remaining defendants including the Insurer Defendants' attorneys, McDonnell & Adels, P.C., Melli Guerin & Wall, P.C., Katten Muchin Rosenman LLP, Rivkin Radler LLP, Iseman Cunningham Riester & Hyde LLP (the "Attorney Defendants"), the National Insurance Crime Bureau ("NICB"),[1] and the New York State Insurance Department, in connection with the Insurer Defendants' fraud investigation activity.

3. As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and because the Removing Defendants have satisfied the procedural requirements for removal.

## I. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

4. This case is subject to removal pursuant to the recently enacted Class Action Fairness Act ("CAFA").

5. As set forth below, this is a putative class action in which: (1) there are 100 or more members in the Plaintiffs' proposed class; (2) at least some members of the proposed class

---

[1] The NICB is a non-profit, industry-funded organization that works with insurers and law enforcement agencies to combat insurance fraud.

have a different citizenship from some defendants; and (3) the claims of the proposed class

members exceed the sum or value of $5,000,000 in the aggregate. Thus, this Court has subject

matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

### A.    Class Action Consisting Of More Than 100 Members

6.    Plaintiffs brought this action pursuant to, *inter alia*, CPLR § 901, and seek

certification of a class defined as "all claimants and their medical providers/assignees that have

submitted, or will submit, No-Fault insurance claims to the Insurance Company Defendants and

which claims and entities were subjected to the conduct of Defendants as enumerated within

these pleadings." See Complaint at ¶57; see also id. at ¶¶56-90.

7.    As demonstrated in the accompanying Affidavit of Nicole Redd, a Section

Manager in the Special Investigations Unit of State Farm, sworn to on June 19, 2008 ("Redd

Aff."), the putative class defined by the Complaint – all claimants and healthcare providers who

submitted, or will submit, No-Fault claims to the Insurance Company Defendants in the six years

preceding the filing of this Action and continuing – includes more than 100 persons with respect

to State Farm alone. See Redd Aff. at ¶2.

8.    Based on these and other allegations, the number of class members of the

Plaintiffs' proposed class is obviously greater than 100 for purposes of 28 U.S.C. §

1332(d)(5)(B).

### B.    Diversity of Citizenship

9.    At the time this lawsuit was filed and as of the date of this notice, the Defendants

were and are citizens of the following states:

- State Farm was and is a citizen of Illinois (it is an Illinois corporation with its
  principal place of business in Illinois);

- AutoOne Insurance Company was and is a citizen of New York (it is a New
  York corporation with its principal place of business in New York);

3

- General Assurance Company, which is the predecessor of AutoOne Insurance Company, was a citizen of New York (it was a New York corporation with its principal place of business in New York;

- One Beacon Insurance Company was and is a citizen of Pennsylvania and Massachusetts (it is a Pennsylvania corporation with its principal place of business in Massachusetts);

- McDonnell & Adels, P.C. was and is a citizen of New York (it is a New York professional corporation with its principal place of business in New York);

- Katten Muchin Rosenman LLP was and is a citizen of Illinois (it is an Illinois limited liability partnership with its principal place of business in Illinois);

- Rivkin Radler LLP was and is a citizen of New York (it is a New York limited liability partnership with its principal place of business in New York);

- Iseman Cunningham Riester & Hyde LLP was and is a citizen of New York (it is a New York limited liability partnership with its principal place of business in New York);

- Melli Guerin & Wall, P.C. was and is a citizen of New Jersey (it is a New Jersey professional corporation with its principal place of business in New Jersey);

- The NICB was and is a citizen of Illinois (it is an Illinois not-for-profit corporation with its principal place of business in Illinois);

- The New York State Insurance Department was and is a New York State administrative agency. See Complaint at ¶¶43-52.

10.    At the time of the commencement of this action and as of the date of this notice, Plaintiff Ava Acupuncture P.C. was and is a citizen of New York because it is a domestic professional corporation whose principal place of business is New York; Plaintiff Okslen Acupuncture P.C. was and is a citizen of New York because it is a domestic professional corporation whose principal place of business is New York; Kings County Acupuncture P.C. was and is a citizen of New York because it is a domestic professional corporation whose principal place of business is New York; Model Supply, Inc. was and is a citizen of New York because it

4

is a domestic corporation whose principal place of business is New York. <u>See</u> Complaint at
¶¶39-42.

11.     Thus, at the time this lawsuit was commenced and as of the date of this notice, at
least one proposed class member and one defendant are diverse. <u>See</u> 28 U.S.C. § 1332(d)(2)(A)
(defining diversity of citizenship under CAFA as including situations where "any member of a
class of plaintiffs is a citizen of a state different from any defendant").

C.      <u>The Amount-In-Controversy Requirement Is Satisfied.</u>

12.     Plaintiffs seek a judgment declaring illegal, null, and void certain practices by the
Insurance Company Defendants dating back six years. Moreover, Plaintiffs seek permanent,
broad injunctive relief against these same four insurance companies. In addition, Plaintiffs seek
to enjoin certain other defendants from using information obtained by and/or through the
insurance companies. As set forth more fully below, the amount placed in controversy by
Plaintiffs' Complaint easily satisfies CAFA's jurisdictional minimum.

13.     Plaintiffs are medical providers who are allegedly entitled to receive No-Fault
medical reimbursement as assignees of patient-insureds. Plaintiffs bring this action on behalf of
a putative class of New York claimants and their medical providers, who have submitted, or will
submit, No-Fault Insurance claims to the Insurance Company Defendants. <u>See</u> Complaint at ¶57.
Plaintiffs allege that by denying claims and engaging in claims-related litigation and statutorily
mandated fraud investigation activity, the Insurance Company Defendants have violated various
New York statutes and regulations relating to, among other things, the qualification of Special
Investigative Unit ("SIU") investigators and claim settlement practices. Plaintiffs seek the
following wholesale declaratory relief against the Insurance Company Defendants:

- A declaration that the Insurance Company Defendants' Special Investigative
  Unit is illegal in that its investigators do not meet the minimum qualifications
  as set forth by 11 N.Y.C.R.R. § 86.6(c).

5

- A declaration that each and every denial of claim form (NF-10) issued by the Insurance Company Defendants that is based in whole or in part upon information obtained by the Insurance Company Defendants' SIU be deemed null and void.

- A declaration that the Insurance Company Defendants have engaged in unfair claim settlements practices in violation of multiple statutes and regulations including, N.Y. Insurance Law § 5106, 11 N.Y.C.R.R. §§ 65-3.2(a)(b)(c) and (e), 65-3.5, 65-4.11, 86.6(a)(b)(c) and (d), N.Y. Comp. Codes R. & Regs. Tit. 11 Part 216 (Regulation 64) and N.Y. Insurance Law § 2601(a)(4).

- A declaration that the Insurance Company Defendants are in violation of N.Y. General Business Law § 349.

- A declaration that State Farm is in violation of Penal Law § 200.03 (Bribery in the second degree); Penal Law § 200.00 (Bribery in the third degree); Penal Law § 200.20 (Rewarding official misconduct in the second degree); and Penal Law § 200.30 (Giving unlawful gratuities); or in the alternative, a declaration that State Farm improperly influenced the Suffolk County District Attorney's conduct in Operation BORIS and caused the DA to investigate, arrest and prosecute individuals and corporations.

See Complaint at ¶38(a).

14.     Plaintiffs allege that the foregoing violations have occurred for a period of six years prior to the filing of the complaint, and will continue into the future until remedied. See id. Plaintiffs further seek a permanent injunction enjoining and restraining the Insurance Company Defendants' SIU investigators (as well NICB's investigators) from engaging in any investigative activity unless and until properly qualified. See id. at ¶38(c) and (d).

15.     Additionally, Plaintiffs seek an injunction against all Defendants, including the Insurance Company Defendants' law firms (referred to in the Complaint as "Enforcer Counsel"), enjoining and restraining them from utilizing any information obtained by and/or through the Insurance Company Defendants' Special Investigative Units, the Suffolk County District Attorney or Suffolk County Task Force associated with "Operation BORIS," NICB Special Agents and/or Defendant, McDonnell & Adels, P.C. See id. at ¶38(c)-(h).

6

16.     As against the New York State Insurance Department, Plaintiffs seek an Order of mandamus, pursuant to CPLR § 7803, compelling the Insurance Department to audit and investigate the claims practices of the Insurance Company Defendants and to take all appropriate action to remedy any and all infirmities, deficiencies and misconduct. See id. at ¶38(b).

17.     The claims of the individual class members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. See 28 U.S.C. 1332(d)(6). Under this standard, Plaintiffs' claims easily meet the jurisdictional threshold.

18.     The Redd Affidavit demonstrates that the jurisdictional minimum in this case is satisfied. As noted above, Plaintiffs seek, among other things, a declaration that "each and every denial of claim form (NF-10) issued by State Farm that is based in whole or in part upon information obtained by State Farm's SIU and/or One Beacon Group's SIU be deemed null and void" for a six-year period preceding the filing of the Complaint up until the alleged infirmity is remedied. See Complaint at ¶38(a)(3). According to the Redd Affidavit, State Farm has denied more than 27,000 claims in 2007 alone based upon information obtained by its SIU, totaling more than $9,000,000. See id. at ¶3.

19.     CAFA's legislative history makes clear that "in assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants." Sen. Rep. 109-14 at 43, Feb. 28, 2005. Prior to the law's enactment, CAFA's sponsor in the House of Representatives reiterated the notion that the amount placed in controversy in a class action seeking declaratory relief must be broadly construed: "a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the

7

need to cease and desist from that conduct that will often cost the defendant in excess of $5 million." 151 Cong. Rec. H730 (daily ed. Feb. 17, 2005) (statement of Mr. Sensenbrenner).

20.     In addition, under CAFA, for purposes of calculating the amount in controversy, the cost of compliance with an injunction is determined from the viewpoint of either the plaintiff or the defendant. See Sen. Rep. 109-14 at 42 ("the Committee intends that a matter be subject to federal jurisdiction under this provision if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)"). Calculation of damages in a class action seeking injunctive relief solely from the perspective of the plaintiff was based on the concern that assessing the amount in controversy from defendant's perspective was tantamount to aggregating damages. See id. However, as courts have properly reasoned, CAFA's explicit requirement that damages in a class action are aggregated to calculate the amount in controversy, see 28 U.S.C. § 1332(d)(6), overrules the "plaintiff-only" perspective in calculating such damages. E.g., Tompkins v. Basic Research LL, S-08-244, 2008 WL 1808316, at *4 n.9 (E.D. Cal. Apr. 22, 2008); see also 151 Cong. Rec. H730 (daily ed. Feb. 17, 2005) (statement of Mr. Sensenbrenner) ("a class action seeking injunctive relief that would require a defendant to restructure its business in some fundamental way might cost a defendant well in excess of $75,000 under current law, but might have substantially less value to each plaintiff or even to the class of plaintiffs as a whole. Because S. 5 explicitly allows aggregation for the purposes of determining the amount of controversy in class actions, that concern is no longer relevant.").

8

21.     In short, given the expansive nature of the relief sought and the size of the putative class, Plaintiffs' request for declaratory and injunctive relief clearly satisfies CAFA's amount-in-controversy requirement.

## II.    THE REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

22.     Removal is timely under 28 U.S.C. §§ 1446(b) because the Complaint is the first pleading, motion, order or other paper from which it could first be ascertained that this action is one which is or has become removable. This Notice of Removal is filed within thirty days of service on the Removing Defendants, on June 2, 2006, of a copy of the Complaint. Pursuant to 28 U.S.C. § 1446(a), and Local Civil Rule 81.1, the Complaint is annexed hereto as Exhibit A.

23.     The Removing Defendants will give written notice to the Plaintiffs (through their counsel) of the filing of this Notice of Removal, as required by 28 U.S.C. § 1446(d).

24.     The Supreme Court of the State of New York, County of New York, is located within the Southern District of New York. Thus, venue is proper in this Court pursuant to 28 U.S.C. § 112(b), because it is the "district and division embracing the place where such action is pending." See 28 U.S.C. § 1441(a).

25.     Pursuant to CAFA, the Removing Defendants need not obtain the consent of any other defendant to remove this action. See 28 U.S.C. § 1453(b) (class actions may be removed "by any defendant without the consent of all defendants")

26.     A copy of this Notice of Removal and a Notice of Filing the Notice of Removal will be filed by the Removing Defendants with the Clerk of the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. §1446(d). The Removing Defendants have thus satisfied the requirements for removal under 28 U.S.C. § 1446 and all applicable rules.

WHEREFORE, the Removing Defendants respectfully request that this Court assume full jurisdiction over the cause herein as provided by law. The Removing Defendants intend no admission of liability by this Notice and expressly reserves all defenses, motions, and pleas, including without limitation objections to the sufficiency of Plaintiffs' pleadings and the propriety of class certification.

Dated: New York, New York
      June 23, 2008

                    Respectfully submitted,

                    GOLDBERG & SEGALLA, LLP

By: _____
         200 Old Country Road, Suite 210
         Mineola, New York 11501

         Counsel for Defendant State Farm Mutual
         Automobile Insurance Company

10

MELLI, GUERIN & WALL P.C.

By:_____

    240 Frisch Court, Suite 301
    Paramus, New Jersey 07652


KATTEN MUCHIN ROSENMAN LLP

By:_____

    575 Madison Avenue
    New York, New York 10022-2585

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
AVA ACUPUNCTURE P.C., OKSLEN
ACUPUNCTURE P.C., Individually and as Assignee
of Leona Deleston, MODEL SUPPLY INC. and
KINGS COUNTY CHIROPRACTIC P.C.,

Docket No.:_____

           Plaintiffs,

    -against-

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, AUTOONE INSURANCE
COMPANY, GENERAL ASSURANCE COMPANY,
ONE BEACON INSURANCE COMPANY,
MCDONNELL & ADELS P.C., MELLI GUERIN &
WALL P.C., KATTEN MUCHIN ROSENMAN LLP,
RIVKIN RADLER LLP, ISEMAN CUNNINGHAM
RIESTER & HYDE LLP, NATIONAL INSURANCE
CRIME BUREAU, ERIC R. DINALLO,
SUPERINTENDENT OF INSURANCE STATE OF
NEW YORK and THE JOHN DOE INSURANCE
COMPANIES,

           Defendants.
-------------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NASSAU    )

      NICOLE REDD, being duly sworn, deposes and says:

      1.     I am a Section Manager in the Special Investigations Unit of State Farm

Mutual Automobile Insurance Company ("State Farm"), and as such, I have personal

knowledge of the facts and circumstances set forth herein. I submit this Affidavit in

support of State Farm's removal petition.

      2.     In 2007, more than 100 claimants and healthcare providers submitted No-

Fault claims for reimbursement to State Farm.

3.    In 2007, State Farm issued 27,126 denials for all medical providers subject

to SIU alert procedures for a total of $9,308,003.27.


*Nicole Redd*

NICOLE REDD


Sworn to before me this

/ Ḷ͞day of June 2008

*Gennie Vonn*

Notary Public

**GENNIE VANN**
Notary Public, State of New York
No. 01VA6011916
Qualified in Nassau County
Certification Filed in Suffolk
Commission Expires __//__25, 20 /○

2161056 v1

## CERTIFICATE OF SERVICE

I hereby certify that the Attached Notice of Removal was served by Federal Express overnight delivery on June 25, 2008 upon counsel for all Parties in this matter:

The Zuppa Firm PLLC
Attorneys for Plaintiffs
53 Herbert Street, Suite 1
Brooklyn, NY 11222

Cozen O'Connor
Attorneys for Defendants
Auto-One Insurance Company,
General Insurance Company and
One Beacon Insurance Company
1900 Market Street
Philadelphia, PA 19103

McDonnell & Adels, P.C.
401 Franklin Avenue
Garden City, New York 11530

Melli Guerin & Wall, P.C.
240 Frisch Court, Suite 301
Paramus, New Jersey 07652

Katten Muchin & Rosenman LLP
575 Madison Avenue
New York, New York 10022-2585

Rivkin Radler LLP
926 RexCorp Plaza
Uniondale, New York 11556-0926

Iseman, Cunningham, Riester & Hyde, LLP
9 Thurlow Terrace
Albany, New York 12203

Wiley Rein, LLP
Attorneys for Defendant
National Insurance Crime Bureau
1776 K Street NW
Washington D.C. 2006

Andrew M. Cuomo
Attorney General of the State of New York
The Capitol
Albany, New York 12224


Dated: June 25, 2008

Colleen Nyston

# EXHIBIT 2

# AFFIDAVIT OF EVA GASPARI

STATE OF NEW YORK     )
                       )     ss.:
COUNTY OF KINGS     )

       Eva Gaspari, being duly sworn, deposes and states the following:

     1.     I am the President and managing attorney of The Law Offices of Eva Gaspari, PLLC, which firm is, with limited exception, exclusively focused on the recovery of first party insurance benefits under Article 51 of the Insurance Law, commonly referred to as the New York No Fault Law. The firm concentrates on the representation of medical professionals against insurance carriers who have been denied claims for no-fault benefits. As such, I have personal knowledge of the statements that are set forth in this affidavit, and would testify as to them in a Court of law if called upon to do so. This knowledge is based upon: 1) direct knowledge of the governing regulations and case law concerning the recovery of No-Fault benefits under Article 51 of the New York State Insurance Law and 11 NYCRR 65; 2) direct observation of the procedure and practice of no-fault within the various Civil Courts of the City of New York; 3) direct knowledge and personal observation of industry practice.

     2.     I am an attorney licensed to practice law in the State of New York. Throughout my professional career I have specialized in the area of No-Fault litigation. I have worked within the field of No-Fault Insurance Litigation for seven years, from the summer of 2001 through the present. For the last three years I have owned and operated a firm devoted, with limited exception, exclusively to the recovery of no-fault benefits. In this capacity I have personally litigated, and/or supervised the litigation of thousands of claims for no-fault benefits within the Civil Courts of the City of New York. Before

opening my firm I worked as an associate attorney at an in house insurance defense firm which exclusively handed no-fault insurance litigation. Prior to my admission to the bar I worked for a year as a law clerk at a major plaintiff's no-fault firm where I assisted in the litigation of hundreds of no-fault claims. Thereafter I worked as a "no-fault litigation supervisor" for a large third party insurance administrator, wherein I was responsible for supervising the management of thousands of no-fault claims that had been placed into litigation. In this capacity I am fully familiar with industry standards, court procedure, and the rules, regulations and case law concerning New York's No-Fault Law.

3.     Article 51 of New York Insurance Law, the Comprehensive Motor Vehicle Insurance Reparations Act, as implemented by the Department of Insurance Regulation 68 (11 NYCRR 65), which is commonly referred to as New York's No-Fault law, mandates that each automobile liability policy that is written in the State of New York provide personal injury protection for medical treatment. A vehicle registered in the State of New York must have New York State No Fault Insurance coverage issued by a company authorized to do business in New York State and licensed by the New York State Insurance Department. Out-of-state insurance coverage of any type is never acceptable or valid. Coverage must be issued in the name of the registrant and must remain in the name of the registrant at all times. If you become a resident of New York State you have 30 days after becoming a resident to register your vehicle in New York State.

4.     Of the thousands of No Fault Claims for medical benefits arising out of New York State No Fault policies of insurance that I have come into contact with, as both a representative of insurance companies and as an attorney for Plaintiffs, beyond

emergency treatment I cannot recall one claim in which the claimant received medical treatment from an out of state provider. Such scenarios can occur if an insured, while in a vehicle covered by a New York State No Fault policy of insurance, receives medical attention as the result of an accident that occurred while driving in an another state. However, such occurrences as compared to the number of medical claims based upon treatment by a medical professional based in New York State are negligible in the extreme.

5.      Article 51 of New York Insurance Law, the Comprehensive Motor Vehicle Insurance Reparations Act, as implemented by the Department of Insurance Regulation 68 (11 NYCRR 65) provides that claims for No-Fault benefits are overdue if they are not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained. NYS Ins Law §5106(a). A claim refers to a bill for medical services that is submitted by a health care service provider to an insurance carrier. Upon receipt of a claim, an insurer will often deny the health care provider's claim for benefits. The reasons for denying a claim vary dependent on the circumstances. Most often claims are denied because an insurer disputes the medical necessity of the treatment provided. Other reasons for denying a claim include, but are not limited to fee disputes, failure to comply with conditions precedent to coverage, or on the allegation that the facts of the loss have been misrepresented.

6.      In order to provide for the prompt resolution of claims, which is the intent of New York's No-Fault statutory scheme, the simple act of denying a claim for benefits does not absolve an insurance carrier from payment of a claim. Benefits that are overdue can be recovered through the court system, or in lieu of litigating the claim in court,

through optional, expedited arbitration. NYS Ins Law §5106 (b), 11 NYCRR 65-4 (Regulation 68-D). If a valid claim or portion is overdue the claimant is also entitled to recover their attorney's reasonable fee for services necessarily performed in connection with securing payment of the overdue claim. As a result, many of the claims that are not paid, including claims that are denied, are recovered through either litigation or arbitration. Based upon my experience, there are hundreds of thousands of claims for no-fault benefits that are denied or become overdue each year. These claims often become the product of court proceedings.

7.    In fact, there are over 100,000 new no-fault claims filed in the Civil Courts of the City of New York every year. In response to the heavy demand for attorneys who are able to litigate or arbitrate unpaid no-fault claims, an industry of firms specializing in no-fault litigation has emerged. *See*, Report of the Civil Court of the City of New York 1997-2006. There are a multitude of firms, both small and large, all who focus on the recovery of unpaid no-fault claims. Several of the larger firms represent hundreds of clients, with claims in the aggregate totaling in the multi-millions of unpaid claim dollars. There are also many smaller firms that represent anywhere from a few large clients to several smaller clients, all of whom have claims that amount, in the aggregate, to multi- millions in unpaid claim dollars.

8.    According to the Report of the Civil Court of the City of New York 1997-2006, the scope of the practice of no-fault litigation is so prevalent that 20% of the filings in the Civil Courts in the State of New York are no-fault filings. The amount of no-fault cases that are brought each year began to spike beginning in 2001, and has continued to

grow each year, as more cases continue to be filed. According to the Report, the Civil Court receives over 100,000 new filings per year from no-fault litigation. The practice of no-fault is large enough that a separate no-fault part has been created in the Civil Courts in New York, Queens, Kings, Bronx and Richmond Counties.

9.     A certain portion of the claims that are the subject of litigation are the result of overdue claims in which an SIU investigation, in one form or another, precipitated the denial or lack of payment. From my experience, most insurance carriers have protocols which require that claims adjusters refer certain claims to its SIU department upon receipt of a claim, for further investigation. These indicators can be anything from the time and proximity of the accident when compared to the inception of the policy to the level of treatment that an injured party receives. Upon my experience there are also certain medical facilities that are routinely investigated, as a matter of course, by certain SIU departments.

10.     Based upon my experience in the claims industry and in dealing with files brought to me by various medical professionals in the cases where a claim is denied via SIU, or defended on the findings of an SIU department, it is my experience that SIU testimony is generally confined to affidavits in support of motions for summary judgment. SIU investigators rarely take the stand at trial to support the basis of a denial of benefits. For example, in the three years of my practice, in which thousands of cases have been litigated, my office has only tried two cases in which an SIU investigator took the stand to support its denial. In the cases in which an investigator is produced for testimony, they are often precluded from testifying based on hearsay objections.

11.    More often, when a case is defended based on the findings of an SIU investigation, an SIU affidavit is produced either to preclude summary judgment in favor of a plaintiff medical provider, or to form the basis of a motion for summary judgment in favor of the insurer.  However, as has recently been noted by Judge Bluth of New York County, while findings of an SIU department are often sufficient to create a triable issue of fact that precludes summary judgment in favor of a plaintiff medical provider, there appears to be a per se rule against summary judgment in favor of an insurer, where the argument for summary judgment stems from an SIU investigation.  Particularly, in a well articulated decision, Judge Bluth reasoned:

> Although there are many cases where a court has found that the investigator's affidavit either is or is not sufficient to defeat a plaintiff's motion for summary judgment, defendant has failed to cite a single case where summary judgment was granted to a defendant based upon a lack of coverage/staged accident defense supported by an investigator's affidavit. From the uncontradicted, overwhelming circumstantial evidence in this record, this Court believes that if there were cases where summary judgment could be granted to the defendant, this would be one of those cases; the only evidence more convincing than the circumstantial evidence presented here would be if the driver and passengers admitted under oath that they fabricated their stories and withdrew their claims with prejudice. Unfortunately, this Court is constrained to deny defendant's motion for summary judgment because it appears that summary judgment is simply unavailable to a defendant denying a claim on the grounds that it involved a staged accident.
>
> Indeed, even when the defendant's testimony is sufficient to convince the Appellate Term that the defendant's refusal to pay the claim was based upon its founded belief that the injuries did not arise out of an insured incident, such a finding is only sufficient to create an issue of fact; it is not a basis for granting summary judgment. The Appellate Term, Second Department has spoken on this point in *A.M. Medical Services, P.C. v. Nationwide Mut. Ins. Co.*, 12 Misc 3d 143(A), 824 NYS2d 760 (App Term 2d Dept 2006). There, even though the evidence was compelling in defendant's favor, that is, the driver and passenger admitted under oath that they faked the accident and withdrew their claims with prejudice, the Appellate Term reversed the trial court's grant of summary judgment to the defendant.

In *A.M. Medical Services,* the EUO transcripts showed that when the assignor and driver were confronted with suspicious facts about their multiple "accidents," they withdrew their claims with prejudice. The Appellate Term held:

> [N]evertheless, the foregoing facts were sufficient to demonstrate that defendant's refusal to pay the claim was based upon a "founded belief that the alleged injur[ies] do[ ] not arise out of an insured incident" (*Central Gen. Hosp. v Chubb Group of Ins. Cos.*, 90 NY2d 195, 199 [1997]; *GPM Chiropractic, P.C. v State Farm Mut. Ins. Co.,* 7 Misc 3d 138[A], 2005 NY Slip Op 50861[U] [App Term, 2d & 11th Jud Dists] ). This presented an issue of fact as to whether there was a lack of coverage. Consequently, plaintiff's motion for summary judgment was properly denied and defendant's cross motion for summary judgment should have been denied.

Even when the court found the defendant's evidence convincing and that it was absolutely right to deny the claim based upon a founded belief of a staged accident, the Appellate Term still reversed trial court's grant of summary judgment on those grounds.

But the Appellate Term's decision does not stop there. The Court *sua sponte* ordered a sanctions hearing against the plaintiff's attorney, and criticized him for pursuing an appeal frivolously:

> Despite being advised of [the evidence of withdrawals], and being provided with background information which led to the "withdrawals," plaintiff's counsel submitted a reply affirmation wherein he continued to seek summary judgment in favor of his client, After having been unsuccessful [below], and despite being faced with the facts which clearly support a founded belief of fraud, plaintiff's counsel took an appeal...

Therefore, the Appellate Term refused to affirm summary judgment even though it clearly thought that the plaintiff should not have pursued its claim when faced with the same evidence. If the Appellate Term thought the evidence of a staged accident was strong enough to consider sanctions against the plaintiff's attorney for pursuing the claim but still refused to grant summary judgment to the defendant, then the only explanation is that there is a *per se* rule against summary judgment dismissing a claim based on staged accident. Absent a contrary decision in this Department, this Court, following *A.M. Medical Services,* denies defendant's motion for summary judgment. *Mountain View Coach Lines v Storms*, 102 AD2d 663, 664, 476 NYS2d 918 (2d Dept 1984); *People v Brisotti,* 169 Misc 2d 672, 673, 652 NYS2d 206, 207 (App Term 1st Dept 1966); <u>*545 West Co. v Schachter,* 16 Misc 3d 431</u>, 837 NYS2d 549 (Civ Ct, NY Cty, 2007)."

<u>AA Acupuncture Serv., P.C. v State Farm Mut. Auto. Ins. Co</u>. 2008 NY Slip Op 51066(U) [19 Misc 3d 1139(A)] (Civ. Ct. NY County, May 30, 2008)

12.    The same holds true for claims that are denied based upon alleged "fraud in the incorporation." I am familiar with a limited number of cases in which an insurance company prevailed on a motion for summary judgment wherein a Plaintiff's case was dismissed based upon evidence of fraudulent incorporation.  These cases include the Multi-Quest series of cases wherein the issue was decided once (<u>Multi-Quest v. Allstate Insurance Company</u>, 17 Misc.3d 37, 844 N.Y.S.2d 565, 2007 N.Y. Slip Op. 27366) and that decision was utilized in other cases involving the same provider and insurance carrier.  Illustrative of the reasoning behind fraud in the incorporation arguments on Summary Judgment is <u>A.T. Medical, P.C. v. State Farm Mutual Insurance Company</u>, 10 Misc.3d 568 (Civ. Ct. Queens Co. 2005).  In <u>A.T. Medical</u> the Court stated:

> Defendant has demonstrated that plaintiff herein is a professional medical corporation, which has shared as much as 65% of its gross revenues with a corporation owned by a nonphysician. Plaintiff does not dispute these facts in its reply papers.

However Courts are definitively trending away from the reasoning of <u>A.T. Medical </u>and other such cases.  For example, Judge Bernice Siegal, Supervising Judge, Civil Court, Queens County recently decided a case which demonstrates this point.  In <u>Parkway MRI PC v. Statewide Insurance Co</u>. Judge Siegal refused to accept the Defendant's assertion that when "an unlicensed layman maintains more of a financial interest in the profitability of a professional medical corporation than the licensed owner" one prong of a two prong test of what constitutes a fraudulently incorporated medical provider is met.  New York City Civil Court, County of Nassau (Index Nos.  145984/2004,  121047/2003,

110757/2004, 110756/2004) (April 11, 2008 Decision) Specifically at issue was the

Defendant's assertion as per a plea allocution/indictment that one Jay Katz that earned

$11,631,927.00 – manager who pled guilty to receiving kickbacks and avoiding taxes –

wherein the owner a Dr. Rabiner only earned $625,000.00.  Judge Siegal stated:

> However, even if the court should use the two-pronged test suggested by the
> defendant, the court is still faced with the challenge of determining how much
> control and how much financial interest a management company can maintain
> over a professional medical corporation.  Without a bright-line rule, the court is
> not prepared to determine whether a medical facility was fraudulently
> incorporated based on speculative and arbitrary figures.  AIU Insurance Co et. al.
> v. Deajess Medical Imaging, P.C., et al., 235 NYLJ 28, P. 22, Col. 1 (Sup. Ct.
> Nassau Co. 2/10/06) Id. at 18

Moreover in AIU Insurance Co. v. Deajess Medical Imaging P.C. the Supreme Court,

Nassau County, refused to set a monetary amount on what a provider's profit margin

should be in determining whether it was fraudulently incorporated.  This holding came in

a case wherein the P.C. received 11% of the profits with the rest of the money going to a

layperson.  The Court also refused to hold that a health care provider must be personally

involved in areas of his practice where he has not demonstrated expertise – equipment

leasing, premises rental and maintenance, office management, etc.   New York Law

Journal Feb. 10, 2006, at 22 (Col. 1) (Sup. Ct. Nassau Co. 2006).

13.    Accordingly, it is extremely often the case that although a claim is denied

or defended based upon an SIU investigation, defendant insurers are unsuccessful in their

defense or abandon their defense as I have personally witnessed at trial a number of times

and are required to pay the value of the claim, plus statutory interest, attorney fees, and

the costs and disbursements of the action.  It is simply not the case that payment on a

claim is absolved because it is the subject of an SIU denial.

14.    Moreover, it is disingenuous to imply that a finding that a denial is null and/or void will prevent an insurer from raising the common defenses that arise from a "fraud" or SIU finding.  SIU based denials by percentage consist almost entirely of two types of alleged core fraud defenses:[1]  1) so called "Staged Accident/intentional event" based non-coverage; 2) improper licensing or so called "fraud in the incorporation."  As a general matter under the No-Fault statutory scheme, insurers are required to preserve their defenses through a denial of claim form that is issued within 30 days of receipt of claim, or if verification is requested, within receipt of verification of claim.  *See,* Presbyterian Hosp. in City of New York v. Maryland Cas. Co., 90 N.Y.2d 274, 660 N.Y.S.2d 536 (1997).  However, in scenarios where fraud is alleged it is overwhelmingly the case by percentage that a denial of claim is not necessary to preserve the defense.

15.    Accordingly, where a defendant insurer defends a claim based upon an allegation that an accident was an intentional act a denial of claim form is not required to preserve the defense.  As recently discussed in the matter of Fair Price Med. Supply Corp. v Travelers Indem. Co., 2008 NY Slip Op 04946 (Court of Appeals):

> In such cases, an insurer who fails to issue a timely disclaimer is not prohibited from later raising the defense because the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed" (*id.* [citation and internal quotation marks omitted]; *see also Zappone v Home Ins. Co.*, 55 NY2d 131 [1982] [Insurance Law § 167[8] (superseded by Insurance Law § 3420[d]) does not require notice of denial of coverage where policy insured neither person nor automobile involved in accident]).

---

[1] By "core" it is meant that although the denial may not even mention "staged accident" or "fraud in the incorporation" it is these alleged defenses that indirectly triggered the denial.  The actual denial is achieved through other mechanisms such as, for example, various requests for additional verification – often onerous and repeated requests.  The alleged failure to comply with the requests or the findings of the verification requests ultimately forms the stated basis of the denial, etc.  Whatever the stated basis for the denial a declaration that the denial is null and void would not strip the insurance carrier of the defenses.

16. Similarly, the defense that a facility is not entitled to reimbursement by virtue of fraud in the incorporation does not require a showing that a denial of claim was issued in order to preserve the defense. The insurance regulations of 11 NYCRR 65-3.16(a)(12) provides in part: "a provider of health care services is not eligible for reimbursement under Section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York ..." The defense that a provider is fraudulently licensed and hence ineligible for reimbursement of no-fault benefits under 11 NYCRR 65-3.16(a)(12), is a nonwaivable defense and is therefore not subject to the 30-day preclusion rule. "Failure to timely deny the no-fault claim, however, does not preclude the insurer's defense that the claimant is fraudulently incorporated, and therefore not eligible for reimbursement pursuant to 11 NYCRR 65-3.16(a)(12)." See, A.B. Medical Services, PLLC v. Prudential Property & Cas. Ins. Co., 7 Misc.3d 14 (N.Y. Sup. App. Term 2005); Midborough Acupuncture, P.C. v. State Farm Ins. Co., 13 Misc.3d 58, 823 N.Y.S.2d 822 (Sup. Ct. App. Term 2006); AVA Acupuncture v. ELCO Administrative Services, 11 Misc.3d 1079A, 814 N.Y.S.2d 889 (Table), 2006 WL 286854 (N.Y. City Civ. Ct. 2006); Citywide Social Work and Psychological Services v. State Farm Mutual Auto Ins., 13 Misc.3d 1215A, 824 N.Y.S.2d 753 (Table), 2006 WL 2787007 (N.Y.Dist.Ct. 2006); First Help Acupuncture v. State Farm Ins. Co., 12 Misc.3d 130A, 819 N.Y.S.2d 209 (Table), 2006 WL 1541272 (Sup. Ct. App. Term 2006).

17. Accordingly, an insurer would not be caused to automatically pay on a claim that was denied based upon a fraudulent accident or fraudulent incorporation solely based on a finding that the denial is null and void. Nor would the insurer be absolved

from payment merely because it alleged these defenses. Most often, as is my experience with the standard custom and practice throughout the industry, with or without the underlying denial of claim form, the substantive issues that constituted the defense would be resolved by either a Court of Law or an arbitrator.

EVA GASPARI

Sworn to before me this
21 day of July 2008

Notary Public

Raymond J. Zuppa
Notary Public, State Of New York
No. 02ZU6146355
Qualified in Kings County
Commission Expires May 15, 2010