Raymond J. Zuppa Jr.
The Zuppa Firm PLLC
53 Herbert Street
Brooklyn, New York 11222
(718) 266-3009
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
==================================

AVA ACUPUNCTURE P.C., OKSLEN ACUPUNCTURE
P.C. Individually and as Assignee of Leona Deleston, MODEL
SUPPLY INC. and KINGS COUNTY CHIROPRACTIC P.C.          08 cv 5650 (SAS)

                                    **Plaintiffs**          ECF CASE

        -against-

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, AUTOONE INSURANCE COMPANY,
GENERAL ASSURANCE COMPANY, ONE BEACON
INSURANCE COMPANY, MCDONNELL & ADELS P.C.,
MELLI GUERIN & WALL P.C., KATTEN MUCHIN &
ROSENMAN LLP, ISEMAN CUNNINGHAM RIESTER &
HYDE LLP, NATIONAL INSURANCE CRIME BUREAU,
ERIC R. DINALLO SUPERINTENDENT OF INSURANCE
STATE OF NEW YORK and THE JOHN DOE INSURANCE
COMPANIES

                            **Defendants**
==================================

**PLAINTIFFS'
MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO REMAND**

**THE ZUPPA FIRM PLLC**
**Attorneys for Plaintiffs**
**53 Herbert Street**
**Brooklyn, New York 11222**
**(646) 750-2972**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................... iii

PRELIMINARY STATEMENT............................................................... 1

STATEMENT OF THE CASE............................................................…...........2

ARGUMENT

I. THE DEFENDANT CANNOT SUSTAIN THEIR BURDEN OF DEMONSTRATING TO A "REASONABLE PROBABILITY" THAT THE AGGREGATE CLAIMS OF THE PLAINTIFF CLASS ARE IN EXCESS OF FIVE MILLION DOLLARS...........................................5

    A. General Principles of Removal/Remand Applicable to CAFA ..............................7

    B. CAFA's Legislative History is of Minimal Interpretative Value............................7

    C. The Defendants Have Failed to Sustain Their Burden of Demonstrating to a "Reasonable Probability" that the Aggregate Claims of the Plaintiff Class are in Excess of Five Million Dollars.........................................................................…....10

    D. While It is Assumed that Federal Courts Have Jurisdiction Over CPLR Article 78 Proceedings – Some Courts Think Not – New York District Courts Have Been Essentially Unanimous in their Refusal to Exercise Such Jurisdiction....................15

II. THIS CASE FALLS UNDER THE LOCAL CONTROVERSY EXCEPTION TO CAFA...16

    A. Virtually All the Members of the Proposed Class are Residents of New York State...17

    B. There Are Four Defendants From Whom "Significant Relief" is Sought by the Class Members, Whose Alleged Conduct Forms a "Significant Basis for the Asserted Claims," and Who are Citizens of the State Where the Action was Originally Filed...18

        1. The Superintendent of Insurance, State of New York.............................…...18

        2. AutoOne Insurance Company and General Assurance Company...................21

        3. McDonnell & Adels, PC.............................................................22

    C. The Principal Injuries Suffered by the Class Were Incurred in the State Where the Action was Originally Filed..............................................................23

    D. No Other Class Action Asserting the Same or Similar Factual Allegations has Been Filed Against Any of the Defendants Within the Past Three Years......................23

III. AN AWARD OF ATTORNEY'S FEES IS WARRANTED...................................23

CONCLUSION.................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

Blockbuster, Inc., v. Michael Galeno, 472 F.3d 53, 56 (2d Cir 2006)...........................7-8, 10

Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir 1994)....................................7

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, No. 1:00-1898, MDL 1358 (SAS), M 21-88, 2006 U.S. Dist. West Law 1004725 at *2 (S.D.N.Y. April 19, 2006) ............................................................................................................................7

Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir 2005)........................8-9

Abrego Abrego v. Dow Chem, Co, 443 F.3d 676, 686 (9th Cir. 2006)...............................8

Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006)................................8

Sullivan v. Finkelstein, 496 U.S. 617, 632 (1990)........................................................9

Shannon v. United States, 512 U.S. 573, 575 (1994)......................................................9

Am. Std., Inc. v. Oakfabco, Inc., 498 F. Supp. 2d 711, 718 (S.D.N.Y. 2007)...................10

DiTolla v. Doral Dental IPA of New York, LLC, 496 F.2d 271, (2d Cir. 2006)................................................................................................10, 13-15, 24

Dimich v. Jensen, 304 F. Supp.2d 517, 519-520 (S.D.N.Y. 2004)...................................10

Baumes v. Lavine, 38 N.Y.2d 296 (1975)..................................................................15

Morningside Supermarket Corp. v. New York State Dep't of Health, 432 F.Supp. 2d 334, 347 (S.D.N.Y. 2006)..................................................................................................16

Blatch v. Hernandez, 360 F.Supp. 595, 637 (S.D.N.Y. 2005).......................................16

Bd. Of Managers of Soho Int'l Arts Condo. v. City of New York, No. 01 Civ. 1226, 2004 WL 1982520 at *28 (S.D.N.Y. 2004)........................................................................16

Gill v. City of New York, No. 00 Civ. 8332, 2003 WL 22253229, at *1 (S.D.N.Y. 2003).........16

Cartagena v. City of New York, 257 F. Supp. 2d 708, 709-11 (S.D.N.Y. 2003)...................16

Adler v. Pataki, 204 F. Supp. 2d 384, 396 (N.D.N.Y. 2002)..........................................16

Reyna v. State University of New York at New Paltz, No. 00-CV-733, 2001 WL 282953, *3-*4 (N.D.N.Y. 2001)......................................................................................16

Verbeek v. Teller, 114 F. Supp. 2d 139, 142-143 (E.D.N.Y. 2000)....................................16

Birmingham v. Ogden, 70 F. Supp. 2d 353, 372-73 (S.D.N.Y. 1999)............................…..16

Camacho v. Brandon, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999)......................................16

Lucchese v. Carboni, 22 F. Supp. 2d 256, 258 (S.D.N. Y. 1998)...........................…..........16

Evans v. Walter Industries, Inc., 449 F.3d 1159, 1166 (11th Cir. 2006), rehearing en banc denied, 180 Fed. Appx. 146 (11th Cir. 2006).....................................................................17

Morgan Guar. Trust Co. of New York v. Republic of Palau, 971 F.2d 917, 924 (2d Cir. 1992)...............................................................................................................23-24

Kuperstein v. Hoffman-La Roche, Inc., 457 F. Supp. 2d. 467, 472 (S.D.N.Y. 2006)…….......24

Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)...........................................24

## Statutes

*New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, et seq.)*...........................................................................................................1, 4, 17

*Regulation No. 68 (11 N.Y.C.R.R. § 65, et seq.)*......................................................1, 4, 17

28 U.S.C. Section 1332(d)(2)......................................................................1, 6, 8

28 U.S.C. Section 1332(d)(4)......................................................................2, 16

28 U.S.C. Section 1332...............................................................................3

28 U.S.C. Section 1441...............................................................................3

28 U.S.C. Section 1446...............................................................................3

28 U.S.C. Section 1453...............................................................................3

CPLR Section 7804(b)................................................................................16

28 U.S.C. Section 1447(c)............................................................................23

## PRELIMINARY STATEMENT

The sole objective of this action is to force the Defendants to stop violating various New York State laws and regulations including Penal Laws and laws that are penal in nature. The Complaint does not seek one thin dime. There is not one sentence in the verbose Complaint that even mentions the recovery of money. The Complaint solely seeks the cessation of illegal activity that is cheating the rate paying citizens of New York out of medical benefits promised to them by the Insurance Regulations of the State of New York.

This Court does not have subject matter jurisdiction over this case. The removing Defendants have failed to meet their burden under 28 U.S.C. Section 1332(d)(2) of demonstrating that the Plaintiffs' claims exceed the $5 million amount-in-controversy requirement under CAFA. As stated the Complaint does not even mention monetary damages.

In support of their Notice of Removal Defendant submitted an affidavit. The affidavit asserts that in 2007 some 27,000 plus denials were issued on the basis of "SIU alert procedures" for a total worth of $9,308,003.27 dollars.

The affidavit cites to numbers without stating whether they pertain to denials issued pursuant to policies purchased under the New York State No Fault Law or nationwide. This Class Action pertains only to policies purchased "Under *New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, et seq.)* and Regulation No. 68 (*11 N.Y.C.R.R. § 65, et seq.*) (Paragraph 1 of Complaint at Exhibit A to the Notice of Removal)

Secondly the above numbers rest on two incorrect assumptions. First that because a claim is denied it is never paid. If that were the case all claims would be denied. In reality it will be demonstrated that almost every denial is litigated with a vast amount being paid. The second incorrect assumption is that a denial declared null and void means a claim that must be paid. It

will be demonstrated that denials born out of "SIU alert procedures" are denials based upon coverage issues/defenses such as alleged "fraud in the incorporation" and "staged accident." These defenses can be asserted at any stage of litigation or arbitration without a denial.

In sum the Defendants are already paying on the denials which Plaintiffs' seek to have declared null and void. Furthermore, they can still avoid payment on the denials declared null and void – for which they would be sued anyway – by asserting the same coverage defenses.

Defendant also relies on legislative history that has been rejected by the Second Circuit as well as a host of other Circuits.

Finally, this case falls under the exception to CAFA enunciated at 28 U.S.C. Section 1332(d)(4)(A) as it is a "local controversy."

Accordingly, the Plaintiffs' motion to remand this action to state court should be granted and the matter should be returned to and permitted to proceed in the venue in which it was commenced.

## STATEMENT OF THE CASE[1]

This action arises out of the Defendants' conduct in defrauding claimants and their Assignor Medical Providers out of benefits and/or payment for medical benefits that the Plaintiffs are entitled to under New York State's No Fault Law. The Defendants' conduct is concerted and tacitly conspiratorial in nature with each Defendant playing a role. The participants are broken down into three basic categories: insurance companies (the "Insurance Company Defendants"); the National Insurance Crime Bureau ("NICB"); and legal counsel that engage in nefarious activities in furtherance of the scheme ("Enforcer Counsel").

---

[1] Distilled solely from the Complaint attached at Exhibit A to the Notice of Removal.

The Insurance Company Defendants, the NICB and Enforcer Counsel work together to defraud claimants and their medical provider assignees by engaging in wholesale bad faith in violation of a plethora of New York State Laws and regulations. The above named entities have also hijacked law enforcement into investigating, indicting and arresting individual claimants and medical providers in order to kill claims.

Finally the New York State Department of Insurance intentionally fails to enforce the regulations which the Insurance Company Defendants brazenly violate and which the Insurance Company Defendants are mandated by New York State law to obey.

The Plaintiffs' Complaint seeks declaratory relief: simple declarations that the Defendants' conduct violates various New York State laws including and primarily insurance regulations. Secondly, the Complaint seeks injunctive relief prohibiting the Defendants from continuous violations of said laws. Thirdly, under New York State's Article 78 of the CPLR the Complaint seeks to compel the New York State Insurance Department to audit/investigate and remedy the Insurance Company Defendants' illegal conduct.

On June 2, 2008 the Plaintiffs filed a Summons and Class Action Complaint in the Supreme Court of the State of New York, County of New York. Removing Defendant State Farm Mutual Automobile Insurance Company ("State Farm") was served on June 3, 2008.[2] On June 23, 2008 the removing Defendant filed a Notice of Removal of the action to the United States District Court, Southern District of New York pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1453, on the purported grounds of diversity jurisdiction pursuant to 28 U.S.C. Section 1332. (A copy of the Notice of Removal is annexed to the Zuppa Aff as Exhibit 1). Defendant

---

[2] The other two removing Defendants are no longer in the case as they were subject to voluntary dismissal. For purposes of this motion it does not matter to the Plaintiffs if they are viewed as being in the case or out.

3

alleges in the Notice of Removal that "[t]his case is subject to removal pursuant to the recently enacted Class Action Fairness Act ('CAFA')" (Notice of Removal Paragraph 4)

The Defendant's Notice of Removal has presented the contents of the Plaintiffs' Complaint in a fair and accurate manner. However there is one area that may cause confusion. In paragraph 6 of the Defendant's Notice of Removal the Defendant, citing to Paragraph 57 of the Complaint, describes the proposed class as "all claimants and their medical providers/assignees that have submitted, or will submit, No-Fault insurance claims to the Insurance Company Defendants and which claims and entities were subjected to the conduct of the Defendants as enumerated within these pleadings." To be clear the Proposed Class is limited to those that have submitted No Fault claims under policies purchased pursuant to the New York State No Fault Law – New York State claimants and their medical provider assignees.

The Defendant is aware of the above fact as evidenced by Paragraph 13 of the Notice of Removal which states: "Plaintiffs bring this action on behalf of a putative class of **New York claimants and their medical providers,** who have submitted, or will submit, No-Fault Insurance Claims to the Insurance Company Defendants. See Complaint at Paragraph 57." (Emphasis added)

The fact that the Proposed Class is limited to policies purchased under New York State's No Fault Law – "New York claimants" (Paragraph 13 of the Notice of Removal) – is enunciated in the first four Paragraphs of the Complaint:

> 1. Under *New York's Comprehensive Motor Vehicle Insurance Reparations Act* (*N.Y. Ins. Law § 5101, et seq.*) and Regulation No. 68 (*11 N.Y.C.R.R. § 65, et seq.*) (collectively referred to herein as "the No-Fault law"), the regulations promulgated pursuant thereto, automobile insurers are required to pay up to $50,000 per eligible injured person ("EIP") for, inter alia, necessary expenses incurred for various health care services that result from injuries sustained in an automobile accident.

4

2.    Under the law, EIPs can be reimbursed directly, or may assign such right to reimbursement to medical providers who treat them. 11 N.Y.C.R.R. §65-3.11. This right of assignment enables EIPs who cannot afford to pay for medical treatment up front, and then wait for reimbursement, to do the following: pay nothing and receive the care they need …

***

4.    This action is brought by the named Plaintiffs on behalf of themselves and all other EIPs, including claimants and their assignee medical providers, who submitted No-Fault claims to one or more of the Insurance Company Defendants and/or had their claims or entitlement to reimbursement "investigated" by the NICB, and/or Insurance Company Defendants and/or Enforcer Counsel.

Indeed the Complaint is saturated with references to the New York No Fault Law.

**ARGUMENT**

**I.**

**THE DEFENDANTS CANNOT SUSTAIN THEIR BURDEN OF DEMONSTRATING TO A "REASONABLE PROBABILITY" THAT THE AGGREGATE CLAIMS OF THE PLAINTIFF CLASS ARE IN EXCESS OF FIVE MILLION DOLLARS**

The Defendant's arguments for removal appear to coalesce around two main points. The first point is based upon the declaration "that 'each and every denial of claim form (NF-10) issued by State Farm that is based in whole or in part upon information obtained by State Farm's SIU and/or One Beacon Group's SIU be deemed null and void' for a six year period preceding the filing of the Complaint up until the alleged infirmity is remedied." (Paragraph 18 of the Notice of Removal) The Defendant argues that this will cost a staggering sum of money. The Defendant cites to the Redd Affidavit stating that it "demonstrates that the jurisdictional minimum in this is case satisfied."

The Redd Affidavit is very short. It consists of four sentences. It is the ultimate in conclusory setting forth absolutely no qualifications, observations or basis of knowledge. Regarding the Defendant's argument the Redd Affidavit simply states as Paragraph 3: "In 2007,

5

State Farm issued 27,126 denials for all medical providers subject to SIU alert procedures for a total of $9,308,003.27."

The second point that the Defendant's argument appears to coalesce around is "Prior to the law's enactment, CAFA's sponsor in the House of Representatives reiterated the notion that the amount placed in controversy in a class action seeking declaratory relief must be broadly construed: 'a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from conduct that will often cost the Defendant in excess of $5 million.' 151 Cong. Rec. H730 (daily ed. Feb. 17, 2005) (statement of Mr. Sensenbrenner)" (Paragraph 19 of the Notice of Removal)

There are a number of problems with the above.    What is one to think.    Mr. Sensenbrenner is saying that if a corporation's "conduct is unlawful or fraudulent" the cost of making it lawful and non fraudulent is a legitimate – again the word "legitimate" – expense that can be properly used to calculate damages pursuant to 28 U.S.C. Section 1332(d)(2).    For example in this Complaint it is alleged that State Farm bribed the Office of the Suffolk County District Attorney to investigate, arrest and indict claimants and medical providers in order to form justifications for denying payment. (See Paragraphs 15 and 29 of the Complaint)    In the event that State Farm was enjoined from committing this "unlawful" conduct would State Farm slap their forehead and legitimately lament: "You mean we cannot bribe anymore.    That is going to cost millions.    We could have been in federal court."

In addition, the Defendant's argument extends to the costs of compliance with injunctive relief again relying on CAFA legislative history and stating that said history "overrules the 'plaintiff only' perspective in calculating such damages." (Paragraph 20 of Notice of Removal) As discussed *infra* this is not quite correct.

6

A.    General Principles of Removal/Remand Applicable to CAFA

Federal district courts are "courts of limited jurisdiction" whose powers are confined to

statutorily and constitutionally granted authority. Blockbuster, Inc., v. Michael Galeno, 472 F.3d

53, 56 (2d Cir 2006). It is well settled that removal statutes are strictly construed such that all

doubts should be resolved against removal. Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274

(2d Cir 1994). This Court has recently stated:

> Section 1447(c) of Title 28 provides: "If at anytime before final judgment it appears that
> the district court lacks subject matter jurisdiction, the case shall be remanded." When a
> party challenges the removal of an action from state court, the burden falls on the
> removing party "to establish its right to a federal forum by **competent proof**." "In light
> of the congressional intent to restrict federal court jurisdiction, as well as the importance
> of preserving the independence of state governments, federal courts construe the removal
> statute narrowly, resolving any doubts against removability." If the removing party
> cannot establish its right to removal by competent proof, the removal is improper, and the
> district court must remand the case to the court in which it was filed. "A case is
> removable when the initial pleading enables the defendant to intelligently ascertain
> removability from the face of such pleadings." This standard "does not require a
> defendant to look beyond the initial pleadings for facts giving rise to removability." Nor
> does it require a defendant to "guess" whether the action is removable. **There is "a
> judicial reluctance to make jurisdiction hinge on fortuities or *ex parte* tactical
> moves."**

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, No. 1:00-1898,

MDL 1358 (SAS), M 21-88, 2006 U.S. Dist. West Law 1004725 at *2 (S.D.N.Y. April 19, 2006)

(Citations omitted) (Emphasis added)

Specifically every circuit court that has considered the issue has reached the conclusion

that under CAFA it is the Defendant's burden to establish subject matter jurisdiction.

Blockbuster, Inc. v. Michael Galeno, 472 F.3d 53, 58 (2d Cir 2006)

B.    CAFA's Legislative History is of Minimal Interpretative Value

The Defendant heavily relies upon two pieces of legislative history. First the

aforementioned statement of Representative Sensenbrenner. 151 Cong. Rec. H730 (daily ed. Feb.

17, 2005). Secondly the Senate Committee Report. S. Rep. No. 109-14 at 42 & 43 (Feb. 28, 2005). Defendant relies on this legislative history to assert that the aforementioned efforts to cure illegality are an expense that could properly be used to calculate damages pursuant to 28 U.S.C. Section 1332(d)(2) and that CAFA overrules the "plaintiff-only" perspective in calculating damages. 151 Cong. Rec. H730 (daily ed. Feb. 17, 2005). Similarly the Defendant relies on S. Rep. No. 109-14 at 42 & 43 (Feb. 28, 2005) for the assertions that (1) "CAFA's legislative history makes it clear that 'in assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits that would logically flow from granting of the declaratory relief sought by the claimants"; and (2) CAFA overrules the "plaintiff-only" perspective.

Let us fully dispense with S. Rep. No. 109-14 (Feb. 28, 2005). A number of federal circuits, including the Second Circuit, have held that CAFA's legislative history is of minimal interpretive value. *See* Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir 2005) (holding that a "declaration by 13 senators" in the form of Senate Report 109-14 did not trump the plain language of the statute); Abrego Abrego v. Dow Chem, Co, 443 F.3d 676, 686 (9th Cir. 2006); Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006). In Blockbuster, the Second Circuit Court of Appeals noted that:

> **The Senate Report was issued ten days after the enactment of the CAFA statute**, which suggests that its probative value for divining legislative intent is minimal ... To enshrine the Committee Report as law would be to ignore the Constitution's requirement of bicameralism and presentment.

Blockbuster, Inc., 472 F.3d at 58. (Emphasis added)

Supreme Court Justice Scalia is always quite entertaining when it comes to legislative history: "In my opinion, the views of a legislator concerning a statute already enacted are entitled

8

to no more weight than the views of a judge concerning a statute not yet passed." Sullivan v.
Finkelstein, 496 U.S. 617, 632 (1990) (Scalia, J., concurring) Justice Scalia's comments are a
fitting farewell to S. Rep. No. 109-14 (Feb. 28, 2005)'s probative value in this matter.

In 1994 the U.S. Supreme Court issued an opinion which sets the standard for the use of
legislative history. The Court interpreted statutory silence as a clear showing that Congress
chose not to legislate on the issue in question. Shannon v. United States, 512 U.S. 573, 575
(1994). Writing for the majority Justice Clarence Thomas noted that the Court had often
disagreed over the role of legislative history in statutory interpretation, but the Court was not
aware of any case in which the Court had "given authoritative weight to a single passage of
legislative history that is in no way anchored in the text of the statute." Id. at 583. This
"anchored in the text of the statute" approach was recently applied to CAFA by the Seventh
Circuit, Judge Easterbrook. The Seventh Circuit rejected the probative value of CAFA's
legislative history finding that said history had no anchor. Brill, 427 F.3d at 448.

As is the case with S. Rep. No. 109-14 the statements of Representative Sensenbrenner
(151 Cong. Rec. H730) are not anchored in the text of CAFA. Specifically the text of CAFA
that was voted on by Congress and signed by the President contained absolutely no language
regarding anything having to do with the statement "a declaration that a defendant's conduct is
unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from
conduct that will often cost the Defendant in excess of $5 million." Likewise there is no text in
CAFA having anything to do with the "Plaintiff-only perspective" or "defendant", "perspective",
or any of those words.

The legislative history of CAFA simply floats and should be ignored.

9

C.    The Defendants Have Failed to Sustain Their Burden of Demonstrating to a "Reasonable Probability" that the Aggregate Claims of the Plaintiff Class are in Excess of Five Million Dollars

The Second Circuit generally evaluates "jurisdictional facts, such as the amount in controversy, on the basis of the pleadings, viewed at the time when the Defendant files the notice of removal." Blockbuster, Inc., 472 F.3d at 56-57. (Citations omitted)  To establish a basis of jurisdiction pursuant to CAFA the Defendant must show that it appears to a "reasonable probability" that the aggregate claims of the plaintiff class are in excess of $5 million. Id. at 58.

As stated, the Complaint seeks nothing – as in zero – in the way of monetary damages. The Complaint seeks declaratory and injunctive relief as well as relief under New York State's Article 78. (Article 78 will be discussed *infra*)

> In actions seeking declaratory relief or injunctive relief, the amount in controversy is measured by the value of the object in litigation ... Because the amount is measured from the plaintiff's perspective, the value of the requested relief is the monetary value that would flow to the plaintiff if injunctive or declaratory relief were granted.

Am. Std., Inc. v. Oakfabco, Inc., 498 F. Supp. 2d 711, 718 (S.D.N.Y. 2007) (Citations omitted). Contrary to the Defendants assertions in the Second Circuit in cases where injunctive/declaratory relief is sought the amount in controversy under CAFA is based upon the Plaintiff's perspective. DiTolla v. Doral Dental IPA of New York, LLC, 496 F.2d 271, 276-277 (2d Cir. 2006).  In addition benefits from an injunction must not be too speculative or immeasurable.  Am. Std., Inc., 498 F. Supp.2d at 718; Dimich v. Jensen, 304 F. Supp. 2d 517, 519-520 (S.D.N.Y. 2004).

In the case at bar the Defendant has offered nothing but amorphous conclusion to assert that the amount in controversy exceeds $5 million.  Merely citing to legislative history that this Circuit has held to be of limited interpretive value does not add up to $5 million plus dollars. This is sine qua non speculative and immeasurable.  This would be true whether or not the legislative history had any interpretive value because Defendant provides no analysis or

10

computations. Indeed the entire "legislative history" argument is wraithlike and formless. There is but one argument that actually takes shape from what can best be described as a primordial ooze of recitations of legislative history set forth on the same page as quotations of claims contained within the Complaint.

The only argument wherein the Defendant appears to set its feet and "take a swing" is the argument based upon the Redd Affidavit. Again this is predicated upon declaratory relief seeking to have all denials based in whole or in part upon information obtained by the Insurance Company Defendant's SIU deemed null and void. (Paragraph 18 of the Notice of Removal) As already discussed this argument is a degree more defined than ephemeral – but not much and is indeed a weak punch. Here are the entire contents of the Redd Affidavit:

> 1. I am a Section Manager in the Special Investigations Unit of State Farm Mutual Automobile Insurance Company ("State Farm"), and as such, I have personal knowledge of the facts and circumstances set forth herein. I submit this Affidavit in support of State Farm's removal petition.
>
> 2. In 2007, more than 100 claimants and healthcare providers submitted No-Fault claims for reimbursement to State Farm.
>
> 3. In 2007, State Farm issued 287,126 denials for all medical providers subject to SIU alert procedures for a total of $9,308,003.27.

The last sentence – Paragraph 3 – is the only sentence that is relevant to this motion. The sentence is nebulous. As stated we are not sure whether the numbers cited to are based upon policies issued under New York State's No Fault law or all of the automobile insurance policies issued throughout the nation under no fault or simply all automobile insurance policies. Furthermore, the phrase "SIU alert procedures" is vague. The simple question is whether denials based upon "SIU alert procedures" means that the denials were "based in whole or in part upon information obtained by State Farm's SIU and/or One Beacon Group's SIU." There are many obvious differences. The most obvious difference is that SIU alert procedures could just merely

11

be some form of label – "SIU" – for denials that are in fact not based in "whole or in part upon information obtained by" the Insurance Company Defendant SIU; but are merely labeled such.[3] Finally the numbers are obvious hearsay in that they must be based upon records and said records although utilized in the Affidavit were not submitted in admissible form.

The Plaintiffs do not have the power to forgive the above deficits because if the Court lacks jurisdiction the Court lacks jurisdiction. Nevertheless, given that the Complaint focuses on policies issued under New York State's No Fault law let us assume that the Affidavit refers strictly to those claims. Let us further assume that denials based upon "SIU alert procedures" are denials based in whole or in part on SIU findings; although why not just say it. Finally, forget hearsay the federal rules are riddled with exceptions anyway. The Defendant's argument is clear: Declaratory judgment – declaring "that each and every denial of claim form (NF-10) issued by [the Insurance Company Defendants] that is based in whole or in part upon information obtained by [their] SIU be deemed null and void … applicable for the time period of six years prior to the date of the filing of this complaint" – would cost State Farm $9,308,003.27 in 2007 alone.

The above is misleading. As stated the argument rests on two incorrect assumptions. First that because a claim is denied it is never paid. In reality almost every denial is litigated with a vast amount being paid. (See Gaspari Affidavit annexed at Exhibit 2 to the Zuppa Aff. at Paragraphs 5-13; 17) The second and most important incorrect assumption is that a denial declared null and void means a claim that must be paid. Denials born out of "SIU" departments are denials based upon, at their core, coverage issues such as alleged "fraud in the incorporation" and "staged accident." These are defenses to suits brought to collect the unpaid benefits that were denied. These defenses can be asserted at any stage of litigation or arbitration without a

---

[3] Such a scenario would actually comport with a theory of the Complaint.

denial which surely encompasses a denial that has been declared "null and void." (See Gaspari Affidavit, Exhibit 2 of the Zuppa Aff. at Paragraphs 14-17)

In sum the Insurance Company Defendants are already paying on the denials which Plaintiffs' seek to have declared null and void. Furthermore, the Insurance Company Defendants would not be hurt if the denials were declared null and void because the underlying defenses would still be present in any litigation of the denial. In addition said litigation would have occurred regardless of whether or not said denial was declared null and void. This is a matter of New York State law.

The Redd Affidavit is worthless in computing the amount in controversy in this matter.

The Second Circuit case most analogous to this case is DiTolla v. Doral Dental IPA of New York, LLC, 496 F.2d 271 (2d Cir. 2006). DiTolla really ends the discussion.

In DiTolla the Second Circuit affirmed the District Court's decision to remand a case back to State Court that Defendant had removed pursuant to CAFA. The amount in controversy was the sole issue. "The appeal in this class action asks us to determine the amount in controversy in an action for an accounting where there is no accompanying demand for damages or restitution." Id. at 272. If the Second Circuit remanded the DiTolla case one would be severely hard pressed to justify keeping this case in federal court.

This is due to the fact that the in DiTolla the Plaintiff sought an accounting. The Court defined an accounting using copious citation as a "distinct cause of action rooted in equity ... Such action seeks 'an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due.'" Id. at 275. (Citations omitted)  But DiTolla did not ask for money. So the Court equated actions seeking an accounting with actions seeking declaratory or

injunctive relief. Id. at 275-276. Likewise the case at bar seeks declaratory and injunctive relief with no demand for money damages.

In DiTolla the Defendant was a third-party administrator of a multi-state pool funded by Medicare and Medicaid that reimbursed member dentists for dental services rendered to patients. DiTolla and a putative class of other dentists sought the accounting because they felt that the Defendant was bilking the pool out money through fraudulent fees. Id. at 272-273. The Court could not make heads or tales of the Defendant's own purported numbers as to the amount in controversy based upon Defendant's differing calculations of the amount the pool was funded and how much it had been reduced. Id. at 276.

Likewise in the case at bar it is very hard to discern any specific amount claimed by the Defendants to be in controversy.

In any event for purposes of the motion to remand, and obviously to be as clear as possible, the Second Circuit simply gave the Defendant all benefit of the doubt and assumed that the fund at issue met the jurisdictional requirements of CAFA. The Second Circuit stated:

> Although it is unclear exactly what funds Doral Dental identified as comprising the res at issue, we proceed on the District Court's assumption that the asserted res is the New York Pool, and we will assume that the fund meets the jurisdictional requirements of CAFA. The amount, however, is not "in controversy" in the present litigation. Indeed, DiTolla's complaint does not even purport to suggest the value of, much less lay claim to, the Pool. It seeks only an accounting, the results of which are presently unknown. **For that reason, no one can say how much money may be ultimately claimed by DiTolla.** *See Kheel v. Port of New York Authority*, 457 F.2d 46 49 (2d Cir. 1972) ("Generally ... the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested")

Id. at 276-277 (Emphasis added)

The above holding means that according to the Second Circuit even if the Defendant could come up with a jurisdictional amount in controversy to a "reasonable probability" – in an

14

action premised upon an accounting which by definition seeks money – the case did not belong in federal court because the Plaintiff did not ask for money. In fact the holding in DiTolla anticipates that the Plaintiffs will ask for money but still held at is it did: "For that reason, no one can say how much money may be ultimately claimed by DiTolla." Id.

In the case at bar money damages are not part and parcel of either declaratory relief or injunctive relief. The Plaintiffs are not seeking money. As discussed *infra* there is a "pot of gold" at the end of the rainbow that is this suit. However the "pot of gold" consists of the New York State Department of Insurance, based upon a series of staggering judicial declarations, being enjoined by law and compelled to end the illegal conduct.

D.    While It is Assumed that Federal Courts Have Jurisdiction Over CPLR Article 78 Proceedings – Some Courts Think Not – New York District Courts Have Been Essentially Unanimous in their Refusal to Exercise Such Jurisdiction

The Forty-First Claim for relief in this action at Paragraph 775:

Based upon the conduct of the Insurance Company Defendants as described above the Plaintiff seeks an Order pursuant to Article 78 of the New York State Civil Practice Law and Rules compelling Eric R. Dinallo Superintendent of Insurance State of New York to audit and investigate the claims practices of the Insurance Company Defendants and take all appropriate action to remedy any and all infirmities, deficiencies and misconduct as enjoined by New York State law upon Eric R. Dinallo Superintendent of Insurance State of New York.

First, it should be noted that there was an error in pleading.[4] The Article 78 cause of action should not have been included as a Class Action. In fact it is hornbook New York Law that an Article 78 Proceeding cannot be maintained as a Class Action. Baumes v. Lavine, 38 N.Y.2d 296 (1975). Eventually, after amendment of the Complaint, this cause of action would have to be remanded back to State Court because CAFA is inapplicable and supplemental jurisdiction tenuous at best.

---

[4] Oh if there were only one.

Courts in this Circuit have been virtually unanimous in the refusal to exercise supplemental jurisdiction over claims asserted under New York Civil Practice Law and Rules Article 78. Morningside Supermarket Corp. v. New York State Dep't of Health, 432 F.Supp. 2d 334, 347 (S.D.N.Y. 2006); *see* Blatch v. Hernandez, 360 F.Supp. 2d 595, 637 (S.D.N.Y. 2005); Bd. Of Managers of Soho Int'l Arts Condo. v. City of New York, No. 01 Civ. 1226, 2004 WL 1982520 at *28 (S.D.N.Y. 2004); Gill v. City of New York, No. 00 Civ. 8332, 2003 WL 22253229, at *1 (S.D.N.Y. 2003); Cartagena v. City of New York, 257 F. Supp. 2d 708, 709-11 (S.D.N.Y. 2003); Adler v. Pataki, 204 F. Supp. 2d 384, 396 (N.D.N.Y. 2002); Reyna v. State University of New York at New Paltz, No. 00-CV-733, 2001 WL 282953, *3-*4 (N.D.N.Y. 2001); Verbeek v. Teller, 114 F. Supp. 2d 139, 142-143 (E.D.N.Y. 2000); Birmingham v. Ogden, 70 F. Supp. 2d 353, 372-73 (S.D.N.Y. 1999); Camacho v. Brandon, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999); Lucchese v. Carboni, 22 F. Supp. 2d 256, 258 (S.D.N. Y. 1998).

As Judge Chin explained in Cartagena Article 78 contains an exclusivity provision requiring that any suit brought pursuant to the Statute be brought in "the supreme court in the [relevant] county," or, in very limited circumstances, the Appellate Division. Cartagena v. City of New York, 257 F. Supp. 2d at 710; CPLR Section 7804(b). Judge Chin further held that "the Article 78 proceeding is a novel and special creation of state law." Id. As such, a federal court "does not have the power to exercise supplemental jurisdiction" to hear Article 78 challenges. Id.

## II.

## THIS CASE FALLS UNDER THE LOCAL CONTROVERSY EXCEPTION TO CAFA

Under 28 U.S.C. Section 1332 (d) (4) (A) district courts must decline jurisdiction where four circumstances exist: (1) more than two-thirds of the class members are citizens of the state

16

where the action was originally filed; (2) there is at least one defendant from whom "significant relief" is sought by the class members, whose alleged conduct forms a "significant basis for the asserted claims," and who is a citizen of the state where the action was originally filed; (3) the principal injuries suffered by the class were incurred in the state where the action was originally filed, and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the past three years. The local controversy exception is designed to ensure that state courts hear cases of a truly local nature. Evans v. Walter Industries, Inc., 449 F.3d 1159, 1166 (11th Cir. 2006), rehearing en banc denied, 180 Fed. Appx. 146 (11th Cir. 2006).

A.    Virtually All the Members of the Proposed Class are Residents of New York State

Virtually all of the members of the proposed class are residents of New York because the proposed class consists of those who purchased insurance policies under *New York's Comprehensive Motor Vehicle Insurance Reparations Act* (*N.Y. Ins. Law § 5101, et seq.*) and Regulation No. 68 (*11 N.Y.C.R.R. § 65, et seq.*) (*See* Paragraphs 1, 2, and 4 of the Complaint). The Defendant should have no problem with this characterization as evidenced by Paragraph 13 of the Notice of Removal which states: "Plaintiffs bring this action on behalf of a putative class of **New York claimants and their medical providers,** who have submitted, or will submit, No-Fault Insurance Claims to the Insurance Company Defendants." (Emphasis added) Persons who purchase the above New York State Insurance are residents of New York because "a vehicle registered in the State of New York must have New York State No Fault Insurance coverage issued by a company authorized to do business in New York State and licensed by the New York State Insurance Department. Out-of-state insurance coverage of any type is never acceptable or valid. Coverage must be issued in the name of the registrant and must remain in the name of the

17

registrant at all times.  If you become a resident of New York State you have 30 days after becoming a resident to register your vehicle in New York State." (See Gaspari Affidavit, Exhibit 2 of the Zuppa Aff., at Paragraphs 3-4 for a full discussion).

B.    There Are Four Defendants From Whom "Significant Relief" is Sought by the Class Members, Whose Alleged Conduct Forms a "Significant Basis for the Asserted Claims," and Who are Citizens of the State Where the Action was Originally Filed

It will be demonstrated that in this matter we have four New York State Residents from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims asserted.  This includes two insurance companies – AutoOne and General Assurance, McDonnell & Adels P.C. and the New York State Department of Insurance – fifty-seven percent of the total Defendants accounting for the three Defendants who are no longer in the action.[5] (See Paragraph 9 of the Notice of Removal)

1.    The Superintendent of Insurance, State of New York

Again the Forty-First Claim for relief in this action at Paragraph 775 states:

Based upon the conduct of the Insurance Company Defendants as described above the Plaintiff seeks an Order pursuant to Article 78 of the New York State Civil Practice Law and Rules compelling Eric R. Dinallo Superintendent of Insurance State of New York to audit and investigate the claims practices of the Insurance Company Defendants and take all appropriate action to remedy any and all infirmities, deficiencies and misconduct as enjoined by New York State law upon Eric R. Dinallo Superintendent of Insurance State of New York.

The above claim for relief comes near the end of the Complaint directly after that portion of the claims section seeking a host of declarations primarily regarding violations of the Insurance Regulations by the Insurance Company Defendants.  It is obvious that the declarations build in a manner such that the sheer amount of declared unlawful behavior would rise to the level wherein

---

[5] The case against the other removing Defendants Katten Muchin Rosenman LLP and Melli Guerin & Wall P.C. has been voluntarily dismissed pursuant to the subject rules.  The same is true of New York Defendant Rivkin Radler LLP.

the Superintendent would be enjoined as a matter of law to have to investigate this activity. Once enjoined by law the Superintendent can be compelled via Article 78.

The Complaint seeks to have the Insurance Company Defendants audited and investigated by the Superintendent. In addition, the Complaint seeks to have the Superintendent take all appropriate action to remedy and all infirmities, deficiencies and misconduct. In and of itself this should be deemed "significant relief" sought from the Superintendent by the Plaintiffs.

However let us approach the issue in relative terms. As demonstrated *supra*, a declaration that all Insurance Company SIU based denials be deemed "null and void" would have little impact on whether the Plaintiffs collected unpaid bills and whether the Insurance Company Defendants would have to pay them. Yet such a declaration is portrayed as one of the ultimate goals, if not the ultimate goal, of this Complaint. In reality the Complaint has laid out a long laundry list of misconduct committed by the Insurance Company Defendants in conjunction with the other Defendants in order to gain the true ultimate relief of this Complaint – intervention by the Superintendent of Insurance of the State of New York.

Throughout the Complaint it is alleged that the Superintendent's conduct or lack thereof forms a "significant basis for the asserted claims." The Complaint is permeated with references to the Superintendent. Paragraph 16 of the Complaint:

> State Farm also wields improper influence over the Insurance Department, evidenced by the Insurance Department's failure to properly police, regulate, and investigate State Farm. Furthermore when the Insurance Department does investigate State Farm it overlooks transgressions that should be further investigated and fails to punish or properly punish State Farm.

*See also* Paragraphs 60-61; 91, of the Complaint calling for Insurance Department oversight and the tailoring of a proper remedy involving the Insurance Department; see the section entitled "STATE FARM'S ABYSMAL RECORD OF MISDEEDS THAT SHOULD HAVE

19

WARRANTED  GREATER  INVESTIGATION  AND  PUNISHMENT  FROM  THE

INSURANCE DEPARTMENT" at Paragraphs 141-158 of the Complaint and Paragraph 157 in

particular:

> Based upon the contents of this section and all of the above pleaded facts the Insurance
> Department abrogated its ministerial duty of properly policing State Farm's conduct for
> which purpose – the policing of insurance company conduct – said Department was
> primarily created for;

Or "The Insurance Department reacted to the above complaint [about State Farm misconduct] by

doing nothing except suggesting that the issue be decided via litigation." (Paragraph 194);

Paragraph 204-205:

> The Insurance Department has never investigated one single abuse by insurance
> companies as enunciated in State Farm v. Mallela, 4 N.Y.3d 313 (2005) ... In fact the
> Insurance Department in an Opinion Letter dated December 22, 2006 states that
> insurance companies do not have to enunciate any reason whatsoever for why an
> insurance carrier is requiring the EUO ... The above Opinion Letter gives insurance
> carriers the ability to circumvent the No-Fault law because a medical provider cannot
> afford to attend a EUO on every single claim or bill.  Said opinion letter completely
> ignores the safeguards enunciated by the Court of Appeals in State Farm v. Mallela, 4
> N.Y.3d 313 (2005);

And Paragraph 331:

> The above Opinion letter [regarding ISO] highly calls into question the Insurance
> Department's faithfulness to its purpose of protecting consumers as well as who actually
> runs the taxpayer funded governmental entity;

The section contained at Paragraphs 438-444 labeled:

> THE ONE BEACON GROUP'S [defined as One Beacon, General Assurance and
> AutoOne Insurance] ABYSMAL RECORD OF MISDEEDS THAT SHOULD HAVE
> WARRANTED GREATER INVESTIGATION AND PUNISHMENT FROM THE
> INSURANCE DEPARTMENT

This is just a sample of the pleaded significant conduct.

2.    AutoOne Insurance Company and General Assurance Company

Briefly the Complaint demonstrates that the AutoOne and General are each, standing alone, as significant a Defendant in terms of significant relief demanded and significant conduct as the sole removing Defendant State Farm. In fact the factual recitations and claims against State Farm and AutoOne, as well as General, are essentially the same. See "Preliminary Statement" of the Complaint at Paragraphs 1-32. All companies have illegal SIU Departments. All engage in a scheme to create false justifications for denials. All treat their claims departments as profit centers with incentivized claims handling in violation of New York State Insurance Regulations. The key paragraph for some of the heavier conduct including improper influence of the Superintendent of Insurance is Paragraph 22: "The Defendant One Beacon Group engages in the same illegal conduct as State Farm as alleged in Paragraphs 11 through 21 above." Moreover it is alleged that all three companies improperly utilize "enforcer counsel" and the NICB to manufacture false justifications for denials.

The only difference is that State Farm is alleged to have orchestrated, through the NICB with bribes disguised as grants, a large criminal investigation the led to arrests and indictments in order to kill claims. (Summarized in Paragraphs 29-32) In addition State Farm engages in a fraudulent Independent Medical Examination Scheme and Examination Under Oath Scheme (Paragraphs 159-243). On the other hand adding significance is AutoOne's scheme to rob the rate paying citizens of New York out of benefits by intentionally denying claims while maintaining inadequate reserves as per the New York State Insurance Regulations. The ultimate goal is the future declaration of bankruptcy with no money in reserve to pay claims. (Paragraphs 453-459). Thus the money is stolen. In addition both AutoOne and General engage in a scheme

of forcing cases involving denied claims without defenses to trial merely to wear down claimants in violation of New York State Insurance Laws.  (Paragraphs 445-452)

The Claims against all three companies are identical except as to the differences enunciated above.  (Paragraphs 609-727)

3.    McDonnell & Adels, P.C.

The above defendant is a defendant from whom "significant relief" is sought by the class members and whose alleged conduct forms a "significant basis for the asserted claims."  For example Paragraphs 34-35:

> Enforcer Counsel Defendant McDonnell & Adels acts as the hub through which false/bad faith information obtained through its own nefarious "investigations" and the Insurance Company Defendants' "investigations" is disseminated to other Defendant Insurance Companies (s/h/a "John Doe Insurance Companies"), in violation of the Donnelly Act. Enforcer Counsel Defendant McDonnell & Adels, in concert with the Insurance Company Defendants' SIU, in furtherance of the above scheme has utilized the services of a former law enforcement agent involved in the original BORIS investigation.

McDonnell & Adels Engineered State Farm's EUO denial scheme (Paragraphs 162-205) and One Beacon Groups Litigation Bad Faith (Paragraphs 445-452) and assists in AutoOne's inadequate reserve scheme. (Paragraphs 453-459).  They also rate their own lengthy section of the Complaint "MCDONNELL & ADELS: THE HUB AND FACILITATOR OF THE INSURANCE COMPANY DEFENDANTS' CONSPIRATORIAL MISCONDUCT" at Paragraphs 465-578. This section details the knowing submission of false evidence to the Courts in violation of New York States Judiciary with said violations being criminal and punishable by jail. This section also details the coercion of witnesses into giving false statements without the presence of counsel in violation of a plethora of Disciplinary Rules. (*See also* Paragraphs 579-591).

22

There are seven claims seeking Declaratory Judgment against McDonnell & Adels P.C. (Paragraphs 728 -759) and four claims for Injunctive Relief. (Paragraphs 780-789).

C.    The Principal Injuries Suffered by the Class Were Incurred in the State Where the Action was Originally Filed

The above is true by virtue of the Plaintiffs' New York residency and the New York State Policies of Insurance purchased by said residents. Please see "II." "A." above and the cited references therein. In sum the Plaintiffs were denied payment for medical services right here in New York.

D.    No Other Class Action Asserting the Same or Similar Factual Allegations has Been Filed Against Any of the Defendants Within the Past Three Years.

The facts alleged in this Complaint are truly extraordinary. From bribery of law enforcement by an insurance company to the improper use of law enforcement information by the Insurance Company Defendants in conjunction with former members of law enforcement this Complaint is quite unique. There are rogue entities operating without proper licensure working in the margins of legitimate law enforcement. The undersigned will refrain from detail at this point and merely cite to the Preliminary Statement section of the Complaint beginning at Paragraph 1.

## III.

## AN AWARD OF ATTORNEYS' FEES IS WARRANTED

Title 28 U.S.C. Section 1447(c) provides that: "[a]n order remanding the case may require payment of just costs and any actual expenses including attorney fees, incurred as a result of the removal." The Second Circuit Court of Appeals has explained that Section 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees." Morgan Guar. Trust Co. of New York v. Republic of Palau, 971 F.2d 917, 924

(2d Cir. 1992).  Assessments of costs and fees against the removing defendant do not require a finding of bad faith or frivolity on the part of the removing defendant.  Kuperstein v. Hoffman-La Roche, Inc., 457 F. Supp. 2d. 467, 472 (S.D.N.Y. 2006) (granting motion to remand and awarding plaintiff recovery of attorneys' fees and costs).  The test is whether the removing party "lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)

One need only look to the Second Circuit's decision in DiTolla v. Doral Dental IPA of New York, LLC, 496 F.2d 271 (2d Cir. 2006) to determine that the subject Notice of Removal should never have been filed.  Furthermore, it has been repeatedly brought to this Court's attention that the Defendant's arguments in support of removal are nebulous.  The annexed Affidavit, aside from being grotesquely deficient, is misleading.  Finally the reliance on the legislative history in light of this Circuit's and this District's treatment of said history was totally uncalled for.  We have worse than a mere guess here.  We have a facade and a number of guesses.

This Complaint was brought in New York State Supreme Court, County of New York.  It was designed, despite deficiencies, with the idea of remaining there.  The undersigned has no experience in federal practice and wanted none.  The mere act of filing a Notice of Removal literally swept or stole – depending on the mens rea – this case out of the State Court in the middle of the night.  This has disrupted ever evolving strategy to a degree that cannot be discussed.    Simple ministerial maneuvers in State Court have turned into long research assignments and often times seeming paralysis which is deadly.

In sum a Notice of Removal has tremendous power that should not be utilized as a tactic.  Given the law and facts this Notice of Removal smacks of tactics.

## CONCLUSION

The case should be remanded back to the Courts of the Sovereign State of New York and

the Plaintiffs awarded fees and costs.

Dated: Brooklyn, New York
      July 21, 2008

Raymond J. Zuppa Jr. Esq.
Attorney for the Plaintiffs
53 Herbert Street
Brooklyn, New York 11222

25