**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                              :

**AVA ACUPUNCTURE P.C., OKSLEN**
**ACUPUNCTURE P.C., Individually and as**
**Assignee of Leona Deleston, MODEL**
**SUPPLY INC. and KINGS COUNTY**
**CHIROPRACTIC P.C.,**

                 **Plaintiffs,**

           - against -

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, AUTOONE**
**INSURANCE COMPANY, GENERAL**
**ASSURANCE COMPANY, ONE BEACON**
**INSURANCE COMPANY, MCDONNELL &**
**ADELS P.C., MELLI GUERIN & WALL P.C.,**
**KATTEN MUCHIN ROSENMAN LLP,**
**RIVKIN RADLER LLP, ISEMAN**
**CUNNINGHAM RIESTER & HYDE LLP,**
**NATIONAL INSURANCE CRIME BUREAU,**
**ERIC R. DINALLO, SUPERINTENDENT of**
**INSURANCE STATE OF NEW YORK and**
**THE JOHN DOE INSURANCE COMPANIES,**

                **Defendants.**
-------------------------------------------------------------X

**OPINION AND**
**ORDER**
**08 Civ. 5650 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

1

## I.   INTRODUCTION

On June 23, 2008, defendants State Farm Mutual Automobile Insurance Company ("State Farm"), Melli, Guerin & Wall P.C. and Katten Muchin Rosenman LLP (together, the "removing defendants") removed this putative class action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA").[1] Since then, plaintiffs have voluntarily dismissed their claims against Melli, Guerin & Wall P.C. and Katten Muchin Rosenman LLP, leaving State Farm as the only remaining removing defendant.[2] Plaintiffs now move to remand the suit to state court.[3] For the reasons stated below, plaintiffs' motion to remand is denied.

---

[1]   *See* Notice of Removal.  CAFA is codified at 28 U.S.C. § 1332(d).

[2]   *See* Notice of Dismissal of Melli, Guerin & Wall P.C.; Notice of Dismissal of Katten Muchin Rosenman LLP.

[3]   *See* Plaintiffs' Memorandum of Law in Support of Motion to Remand ("Pl. Mem."). On July 25, 2008, plaintiffs AVA Acupuncture P.C. and Model Supply Inc. voluntarily dismissed this action against all defendants. On October 15, 2008, plaintiff Kings County Chiropractic P.C. also voluntarily dismissed this action against all defendants. Thus, the only remaining named plaintiff is Okslen Acupuncture P.C., individually and as assignee of Leona Deleston.

## II.    BACKGROUND

Plaintiffs are medical providers who have been assigned No-Fault medical reimbursement claims by eligible injured persons ("EIPs").[4]  Plaintiffs filed suit in state court on behalf of a putative class of all New York claimants and their medical providers who "have submitted, or will submit, No-Fault Insurance claims to the Insurance Company Defendants."[5]  Plaintiffs allege that defendant insurers have fraudulently failed to pay statutorily mandated medical benefits under New York's No-Fault Insurance Law.[6]  They also allege that the defendant insurers, with the assistance of their legal counsel and special investigation units ("SIUs") have violated a number of New York state laws.[7]  Most notably, plaintiffs challenge the defendant insurers' use of "unqualified and illegal SIUs," the employment of "harassing, abusive verification and litigation tactics," and "the use of preset numeric targets to limit claim payouts."[8]  State Farm, in particular, is

---

[4]    *See* Complaint ¶¶ 2, 4.

[5]    *Id.* ¶ 57.

[6]    *See id.* ¶¶ 13, 22.  New York's No-Fault Insurance Law is codified at N.Y. Ins. Law § 5101, *et seq.*, and the regulations promulgated thereto can be found at 11 N.Y.C.R.R. § 65, *et seq.*

[7]    *See id.* ¶ 5.

[8]    *Id.* ¶ 57.

also alleged to have engaged in bribery, the payment of unlawful gratuities, and the exercise of improper influence over the Suffolk County District Attorney's office.[9]

Plaintiffs allege that defendants' violations have occurred over a period of six years prior to the filing of the Complaint.[10]  To remedy the alleged harm suffered by EIPs and their assignor medical providers, plaintiffs seek a declaratory judgment finding defendants in violation of various provisions of New York state laws, including New York Insurance laws.[11]  In addition, plaintiffs seek a "declaration that each and every denial of claim form (NF-10) issued by [the insurer defendants] that is based in whole or in part upon information obtained by [the insurer defendants' SIUs] be deemed null and void."[12]  To prevent future violations, plaintiffs also seek to enjoin and restrain the defendants from either using information from past SIU investigations or collecting further information through SIUs until properly qualified investigators are in place.[13]

---

[9]     See id. ¶¶ 29-33.

[10]    See id. ¶ 38(a).

[11]    See id.

[12]    See id.

[13]    See id. ¶ 38(b)-(h).

4

Certain defendants – State Farm, Melli, Guerin & Wall P.C., and Katten Muchin Rosenman LLP – removed this putative class action to federal court pursuant to the federal removal statute.[14]  Plaintiffs now move to remand on two grounds. *First*, plaintiffs argue that this court lacks subject matter jurisdiction because State Farm has failed to meet its burden of demonstrating that the plaintiffs' claims exceed the five million dollar amount in controversy requirement.[15]  *Second,* plaintiffs contend that even if the amount in controversy requirement is met, this Court should decline jurisdiction under CAFA's "local controversy" exception.[16]

## III.   APPLICABLE LAW

### A.   New York No-Fault Insurance Law

Article 51 of the New York Insurance Law, the Comprehensive Motor Vehicle Insurance Reparations Act, as implemented by the Department of Insurance Regulation No. 68 (11 N.Y.C.R.R. § 65) (referred to herein as the "No-Fault law"), mandates that each automobile liability policy that is written in the State of New York provide personal injury protection for medical treatment.  A

---

[14]    *See* Notice of Removal.  The federal removal statute is codified at 28 U.S.C. § 1441.

[15]    *See* 28 U.S.C. § 1332(d)(2).

[16]    *See id*. § 1332(d)(4)(A).

vehicle registered in the State of New York must have New York state No-Fault Insurance coverage issued by a company authorized to do business in New York state and licensed by the New York State Insurance Department.[17]  Pursuant to New York's No-Fault law, insurers must pay up to $50,000 for medical and other expenses resulting from injuries sustained in an automobile accident.[18]

Under the No-Fault law, EIPs can be reimbursed directly, or may assign their right to reimbursement to the medical providers who treated them.[19] The right of assignment enables a medical provider (assignee) to directly pursue payment from the EIP's (assignor's) insurance carrier.[20]  Once a claimant or his assignee supplies proof of injury and the amount of loss sustained, a No-Fault Insurer has only thirty days before No-Fault benefits are rendered overdue by the No-Fault law.[21]  In addition, to prevent instances of fraud and abuse by EIPs and

---

[17]  *See* 11 N.Y.C.R.R. § 65.

[18]  *See id.*

[19]  *See id.* § 65-3.11.

[20]  *See id.  See also* Complaint ¶ 2.

[21]  *See* N.Y. Ins. Law § 5106(a).

6

their assignees, insurance companies are mandated by law to maintain SIUs that are staffed by "investigators" who meet certain qualification requirements.[22]

## B.    Federal Subject Matter Jurisdiction under CAFA

"[F]ederal district courts are 'courts of limited jurisdiction' whose powers are confined to statutorily and constitutionally granted authority."[23]  In 2005, "Congress enacted CAFA with the purpose of, *inter alia*, expanding the availability of diversity jurisdiction for class action lawsuits."[24]  CAFA amends the diversity jurisdiction statute, vesting the district courts with original jurisdiction over any class action in which (1) the putative class is composed of at least one hundred members; (2) any class member is diverse from any defendant; and (3) the aggregate amount in controversy exceeds five million dollars, exclusive of interests and costs.[25]  The statute further provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether

---

[22]    *See* 11 N.Y.C.R.R. § 86.6.

[23]    *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005), and *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000)).

[24]    *Blockbuster*, 472 F.3d at 56.

[25]    *See* 28 U.S.C. § 1332(d)(2), (5).

the matter in controversy exceeds the sum or value of" the five million dollar jurisdictional amount.[26]

### C.      Removal

When a plaintiff files a complaint in state court that could have been originally filed in federal court, Congress allows the defendant or defendants to remove the action from state to federal court.[27]  Because removal is generally disfavored, "federal courts construe removal statutes narrowly, resolving any doubts against removal."[28]  A party seeking to invoke federal jurisdiction bears the burden of establishing jurisdiction within a "reasonable probability."[29]  The Second Circuit has recently held that CAFA has not changed the burden of proof on jurisdiction, which remains with the party asserting jurisdiction – here the

---

[26]      *See id.* § 1332(d)(6).

[27]      *See id.* § 1441.

[28]      *See Lupo v. Human Affairs, Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citations omitted).  *See also California Pub. Employee's Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004).

[29]      *See Blockbuster*, 472 F.3d at 58.  *See also Concorde Fin. Corp. v. Value Line, Inc.*, No. 03 Civ. 8020, 2004 WL 287658, at *2 (S.D.N.Y. Feb. 11, 2004) (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)).

removing defendant, State Farm.[30]  If the district court finds that it lacks subject matter jurisdiction, the case must be remanded.[31]

### D.   Calculating the Amount in Controversy

Unlike the general diversity statute which requires that at least one claim meet the amount in controversy minimum of seventy-five thousand dollars,[32] CAFA explicitly provides for aggregation of each member's claim in determining whether the five million dollar amount in controversy requirement is met.[33]  In evaluating whether CAFA's jurisdictional minimum is satisfied, the court looks "first to the [] complaint, and then to [the] petition for removal."[34]  If "the initial pleadings and petition for removal are inconclusive as to the value of the controversy, the court may look to the moving papers."[35]

---

[30]    *See Blockbuster*, 472 F.3d at 57 (reasoning that because CAFA does not speak to the burden of proof on jurisdiction, Congress did not intend to alter the longstanding allocation of burden to the party asserting federal jurisdiction).

[31]    *See* 28 U.S.C. § 1447(c).

[32]    *See id.* § 1332.  *See also Exxon Mobil*, 545 U.S. at 552.

[33]    *See* 28 U.S.C. § 1332(d)(6).  *See also Blockbuster*, 472 F.3d at 59.

[34]    *Mehlenbacher*, 216 F.3d at 296 (citing *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957)).

[35]    *Garry G. Moose v. Stant Corp.*, No. 05-CV-070E, 2006 WL 1007611, at *2 (W.D.N.Y. Apr. 12, 2006) (citing *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 297 (E.D.N.Y. 2005)).  *Accord United Food and Comm. Workers*

9

Where non-monetary relief is sought, "the amount in controversy is

measured by the value of the object of the litigation."[36]  In traditional class action

suits in federal court under diversity jurisdiction, the object of the litigation has

been viewed as "the monetary value of the benefit that would flow to the plaintiff

if injunctive or declaratory relief were granted" (the "plaintiff's only"

perspective).[37]  Consistent with the general rule for removal jurisdiction, the

---

*Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d
298, 301 (2d Cir. 1994) (stating that to ascertain the amount in controversy
"federal courts may look outside [the] pleadings to the other evidence in the
record").

[36]     *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347
(1977) (citations omitted) (holding that the "object" in that case was the *right* of
apple growers to conduct business free of regulation, and that the *value of that
right* was measured by the losses that would result to the growers from the
statute's enforcement). *Accord Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 48-49 (2d
Cir. 1972) (holding that the object in the case was the *right* to coordinated public
transportation facilities in the port district, and that the *value of the right* is
measured by the savings Kheel would enjoy if a mass transport system adequate to
his needs existed).

[37]     *American Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717
(S.D.N.Y. 2007) (citing *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th
Cir. 2000)). *Accord Kheel*, 457 F.2d at 49; *Bernard v. Gerber Food Prods. Co.*,
938 F. Supp. 218, 222 (S.D.N.Y. 1996).  The passage of CAFA has led some
courts and commentators to question the continued application of the "plaintiff's
only" perspective. *See, e.g.*, *Tompkins v. Basic Research LL.*, No. Civ. S-08-244,
2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008); *Toller v. Sagamore Ins. Co.*,
558 F. Supp. 2d 924, 930 (E. Ark. 2008); Stephen Shapiro, *Applying the
Jurisdictional Provisions of the Class Action Fairness Act of 2005*, 59 Baylor L.
Rev. 77, 113-14 (2007).  They argue that because CAFA now allows for the
aggregation of a plaintiff's claims in calculating the amount in controversy, the

removing party has been required to demonstrate a "reasonable probability" that the claim is for more than the jurisdictional amount.[38]

## E.     The Local Controversy Exception

If the requirements of CAFA are met, district courts must nevertheless decline jurisdiction where (1) more than two-thirds of the class members are citizens of the state where the action was originally filed; (2) there is at least one defendant from the state where the action was originally filed from whom "significant" relief is demanded; (3) the principal injuries suffered by the class were incurred in the state where the action was originally filed; and (4) no

---

theoretical underpinning for the "plaintiff's only" approach has been undermined. *See Toller*, 558 F. Supp. 2d at 930; Shapiro, *supra*, at 114. Instead, considering CAFA's generalized purpose to expand federal jurisdiction, some contend the "either viewpoint rule" should be applied which values claims for declaratory and injunctive relief based on either the total benefit to the plaintiff class or the aggregate cost to the defendant. *See* Shapiro, *supra.* There has been little evidence of a shift towards an "either viewpoint" perspective in district courts of the Second Circuit. Two recent district court decisions in the Second Circuit have strictly applied the "plaintiff's only" perspective, without opining on whether the defendant's perspective could be considered. *See Moose*, 2006 WL 1007611, at *2; *American Standard*, 498 F. Supp. 2d at 717. The Second Circuit has never directly addressed the issue, but has recently referenced "plaintiff's only" language in a citation within *DiTolla v. Doral Dental IPA of New York.* 469 F.3d 271, 276-77 (2d Cir. 2006). I need not decide this issue because even under the "plaintiff's only" approach the jurisdictional threshold is satisfied.

[38]     *Tongkook Am. Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).

other class action asserting the same or similar factual allegations has been filed against any of the defendants within the past three years.[39]  This is the "local controversy" exception.[40]

CAFA opaquely defines a significant defendant as one from whom "significant relief" is sought, and whose conduct "forms a significant basis for the claims asserted" by the proposed plaintiff class.[41]  CAFA does not define or supply standards for determining whether the relief sought is "significant," or for determining which bases for the plaintiffs' claims are "significant."[42]  However, courts have generally required that the local defendant's conduct must be significant in relation to the conduct alleged against other defendants in the complaint, and that "the relief sought against that defendant is a significant portion of the entire relief sought by the class."[43]

---

[39]     *See* 28 U.S.C. § 1332(d)(4)(A).

[40]     *See Brook v. UnitedHealth Group Inc.*, No. 06 Civ. 12954, 2007 WL 2827808, at *3 n.5 (S.D.N.Y. Sept. 27, 2007).

[41]     *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa), (bb).

[42]     *See id.*

[43]     *Evans v. Water Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006) (citations omitted) (holding that the local defendant was not significant because its liability was not significant compared to other defendants, and its conduct did not form a significant basis for the claims of the class). *See also Mattera v. Clear Channel Commc'ns., Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (holding that the

12

The Second Circuit has never definitively addressed which party bears the burden of establishing the elements of the local controversy exception.[44] Nevertheless, other circuits and district courts in this circuit that have confronted this issue have determined that once the removing defendants prove the amount in controversy and the existence of minimal diversity, the burden shifts to the plaintiffs to prove that the local controversy exception to federal jurisdiction should apply.[45]

## IV. DISCUSSION

### A. The Amount in Controversy

The instant Complaint specifies the amount in controversy in only the most general terms, indicating that the exact number of class members will be ascertained through discovery and review of defendants' records.[46]  Although plaintiffs avoid placing a value on the object of the litigation, plaintiffs do give

local defendant was significant because it owed a significant portion of the total relief claimed by plaintiff).

[44]    *See Blockbuster*, 472 F.3d at 58.

[45]    *See, e.g.*, *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007); *Evans*, 449 F.3d at 1167; *Frazier v. Pioneer Americans LLC*, 455 F.3d 542, 546 (5th Cir. 2006); *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 679-80 (7th Cir. 2006); *Brook*, 2007 WL 2827808, at *6; *Mattera,* 239 F.R.D. at 80.

[46]    *See* Complaint ¶ 59.

some indication of the class action's breadth by stating that "there are thousands of Class Members, in that almost every no-fault claimant and medical provider who have had their claims denied by the Insurance Company Defendants' illegal SIU have had their respective rights aggrieved."[47] In addition, by seeking to render "each and every denial of claim form (NF-10) issued by State Farm" over the last six years "that is based in whole or in part upon information obtained by State Farm's SIU and/or the One Beacon Group's SIU . . . null and void," it is beyond cavil that the object of this class action has significant monetary value.[48]

Nevertheless, on a motion to remand, State Farm bears the burden of producing sufficient evidence to prove, within a "reasonable probability," that the value of the declaratory and injunctive relief sought by plaintiffs meets the minimum amount in controversy requirement of five million dollars. In support of its position, State Farm has offered the affidavit of Nicole Redd, a State Farm SIU Section Manager.[49] In her affidavit, Redd states that over the last six years State

---

[47]    *Id.* ¶ 58.

[48]    *See id.* ¶ 38(a)(3).

[49]    *See* 8/20/08 Affidavit of Nicole Redd, Section Manager in the Special Investigation Unit of State Farm Mutual Automobile Insurance Company, in Opposition to Plaintiffs' Motion to Remand ("Redd Aff. 2"). Defendants had first submitted Redd's affidavit with their Notice of Removal. However, after plaintiffs argued that Redd's affidavit had not been sufficiently clear, defendants submitted a second affidavit with their opposition papers. *See* Memorandum of

14

Farm has denied $40,265,558 worth of claims arising out of investigations

conducted by its SIU investigators.[50]  Redd concludes that "the amount of unpaid

denied claims since 2003 far exceeds $5,000,000."[51]

Plaintiffs nevertheless argue that if this Court relies on the "plaintiff's

only" perspective, State Farm has not shown to a reasonable probability that the

amount in controversy is met.[52]  I disagree.

---

Law on Behalf of Defendant State Farm Mutual Automobile Insurance Company
in Opposition to Plaintiffs' Motion for Remand.  Plaintiffs contend that because
courts evaluate "jurisdictional facts, such as the amount in controversy, on the
basis of the pleadings, viewed at the time when the [d]efendant files the notice of
removal," this Court cannot consider the second Redd affidavit.  However, this
argument runs contrary to well-established precedent in the Second Circuit which
permits courts to look outside the pleadings if they are inconclusive as to the value
of the controversy.  *See, e.g., Moose,* 2006 WL 1007611, at *2; *Pollock,* 367 F.
Supp. 2d at 297; *United Food,* 30 F.3d at 305 (citations omitted).  Plaintiffs also
argue erroneously that the Redd affidavit contains inadmissible hearsay.  Redd
states that she has personal knowledge of the claim denials at issue because she is
a Section Manager in State Farm's SIU.  Redd Aff. 2 ¶ 1.  Also, contrary to
plaintiffs' argument that "Redd fails to state that she even reviewed [State Farm's]
records," the affidavit states that "State Farm has maintained records that enable
me to report that from 2003 to June 2008, State Farm has issued denials arising out
of investigations conducted by SIU investigators in a total sum exceeding $40
million."  *Id.* ¶ 3.  There is no other way to interpret this statement except that
Redd is reporting on the value of the claims after a review of the records.

[50]    *See* Redd Aff. 2 ¶ 3.

[51]    *Id.* ¶ 4.

[52]    *See* Pl. Mem. at 12-15.

15

Pursuant to New York insurance law, absent a valid denial, No-Fault benefits are rendered overdue if not paid within thirty days.[53] By seeking to invalidate "each and every denial of claim form [] issued by State Farm that is based in whole or in part upon information obtained by State Farm's SIU," plaintiffs have made the "object" of the litigation worth at least forty million dollars.  If declaratory relief is granted, there is a distinct possibility that as much as forty million dollars of benefit will flow to plaintiffs.[54]  As a result, State Farm has easily established that, within a "reasonable probability," the five million dollar amount in controversy requirement is met.

Plaintiffs question the forty million dollar figure on two erroneous grounds.  *First*, plaintiffs argue that since a significant percentage of denied claims are subsequently litigated, State Farm is actually already paying many of the claims whose denials plaintiffs now seek to render null and void.[55]  Thus, plaintiffs assert that rendering the original denial of these claims null and void for these resolved claims will not impose any additional liabilities on the insurance

---

[53]     *See* N.Y. Ins. Law § 5106(a).

[54]     Section 5106(a) also provides that any "overdue payments shall bear interest at the rate of two percent per month."  Thus, the value of the denied claims for the last six years may be much more than $40,265,558.

[55]     *See* Pl. Mem. at 12.

defendants.[56]  Plaintiffs would be correct if the relief that they sought was

invalidation of only that portion of denials that State Farm has not already paid.

However, plaintiffs are requesting that "each and every denial of claim form . . . be

deemed null and void" without distinction as to those claims that may have

subsequently been paid.[57]  Because plaintiffs lay claim to all denials, the forty

million dollar figure is the appropriate measure of the value of the controversy.

        *Second*, plaintiffs argue that rendering a denial null and void does not

always mean that payment will be made.[58]  They contend that most denials based

upon information from SIU departments are the result of "coverage issues, such as

alleged 'fraud in the incorporation' and 'staged accident.'"[59]  Because these

defenses may still be raised in suits brought to collect unpaid claims, plaintiffs

contend that the insurance company defendants would not necessarily incur

expenses if the denials were declared null and void.[60]  However, Section 5106(a)

of New York's No-Fault law specifically provides that claims not paid within

---

[56]    *See id.*

[57]    Complaint ¶ 38(a).

[58]    *See* Pl. Mem. at 12.

[59]    *Id.*

[60]    *See id.* at 12-13.

17

thirty days are considered "overdue" and will begin accruing interest at the rate of

two percent per month.  Thus, the practical significance of a declaration that these

claims are null and void is that State Farm will be liable for payment.[61]  Plaintiffs'

arguments therefore fail, and defendants have successfully established the

jurisdictional threshold for the amount in controversy requirement.

## B.    The Local Controversy Exception

---

[61]    Plaintiffs attempt to argue that even if the claims are deemed null and void, they may still have to bring defendants to court and that defendants may, at the conclusion of such proceedings, not be held liable for the full value of the claims.  *See* Pl. Mem. at 12-13.  However, this reasoning is faulty.  In determining whether federal jurisdiction exists, a court needs only to be satisfied that the removing party has established, with *reasonable probability*, the amount in controversy.  *See Tongkook Am. Inc.*, 14 F.3d at 784.  That plaintiffs may ultimately obtain much less than the amount in controversy is inconsequential. *See Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982) (". . . [J]urisdiction is not lost because a plaintiff's ultimate recovery is less than [the amount in controversy].  The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits.").  Although *Zacharia* concerned whether the amount in controversy was satisfied for diversity jurisdiction purposes, the same principles apply here.

Plaintiffs' reliance on *DiTolla* is similarly misplaced.  In that case, the plaintiff brought an accounting action "to determine whether [the defendant administrator] made improper deductions" from a fund.  469 F.3d at 276.  Because plaintiff did not lay claim to the entirety of the funds, the Second Circuit concluded there was simply no way to know prior to the accounting how to value the object of the litigation.  *See id.*  Due to this uncertainty, the Second Circuit ordered remand.  *See id.* at 277.  Here, by contrast, plaintiffs have clearly made the object of the litigation every single claim that was denied based on information from State Farm's SIU department.  *See* Complaint ¶ 38(a).  Thus, there is no difficulty ascertaining the value of the object of the litigation – it is over forty million dollars.  *See* Redd Aff. 2 ¶ 3.

Jurisdiction must nevertheless be declined if plaintiffs prove that the local controversy exception applies. There appears to be no dispute that three of the four elements of the local controversy exception are easily satisfied. Because the proposed class consists only of those who purchased insurance policies under New York's No-Fault law (which is virtually only New York residents), two-thirds of the class members are very likely citizens of New York. Similarly, because virtually all of the class members are New York residents, the principal injuries are suffered in New York. Finally, there is agreement that no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the past three years.

Thus, the only remaining question is whether plaintiffs have demonstrated the existence of at least one "significant" defendant from the state of New York. Plaintiffs argue that AutoOne, General Assurance Company ("General Assurance"), and McDonnell & Adels, P.C. each individually qualify as a "significant" local defendant.[62] However, plaintiffs offer little support for this assertion. For the two insurance company defendants – AutoOne and General Assurance – plaintiffs' principal argument is that they have engaged in many of the same practices as State Farm and are also the target of declaratory and

---

[62]    *See* Pl. Mem. at 21-23.

19

injunctive relief.[63]  The only indication of AutoOne and General Assurance's

relative significance is plaintiffs' assertion that 2,299 complaints, including

complaints related to No-Fault denials, have been filed against the two insurance

company defendants with the New York State Department of Insurance.[64]  No time

frame is given for when these complaints were filed, and plaintiffs do not provide

a breakdown with respect only to complaints related to No-Fault denials.

Nevertheless, even the total number of complaints lodged against AutoOne and

General Assurance pale in comparison with the more than sixty-seven thousand

denials at issue with State Farm.[65]

     Furthermore, even plaintiffs acknowledge that they are alleging

additional violations only against State Farm.  For instance, plaintiffs note that

they are alleging that State Farm "orchestrated . . . with bribes disguised as grants,

a large criminal investigation [that] led to arrests and indictments in order to kill

claims" and that State Farm "engages in a fraudulent Independent Medical

---

[63]    *See id.* at 21.

[64]    *See* Complaint ¶¶ 439-440.

[65]    *See* Redd Aff. 2 ¶ 4 (attesting that "the claim denials resulting from investigation by the SIU unit that investigates medical providers from August 1, 2005 . . . through June 30, 2008 exceed 67,000 separate denials").

Examination Scheme and Examination Under Oath Scheme."[66]  While plaintiffs put much emphasis on allegations unique to AutoOne and General Assurance – AutoOne's "[maintenance of] inadequate reserves" and the engagement by AutoOne and General Assurance of "schemes" to "wear down claimants in violation of New York State Insurance Laws"– this alleged misconduct appears to be less significant than or no different from the alleged misconduct against State Farm.[67]

With respect to McDonnell & Adels, P.C., plaintiffs simply argue that the law firm aided State Farm and other insurance companies in their violations of the law and cite the number of claims plaintiffs are alleging against the firm.[68] Plaintiffs do not offer any evidence from which this court can compare the significance of the relief sought from McDonnell & Adels, P.C. against the relief sought from State Farm.

Plaintiffs have therefore failed to meet their burden of establishing that there is a "significant" local defendant.  As a result, the local controversy exception does not apply.

---

[66]     Pl. Mem. at 21.

[67]     *See* Complaint ¶ 6 (alleging that all defendants engaged in abusive tactics to force claimants to "abandon claims" or "accept lower 'settlements'").

[68]     *See* Pl. Mem. at 22-23.

## V.   CONCLUSION

For the reasons set forth above, plaintiffs' motion to remand this action to state court is denied.  The Clerk of the Court is directed to close this motion (Doc. No. 22).  A conference is scheduled for December 16, 2008 at 4 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 9, 2008

**- Appearances -**

**For Plaintiffs:**

Raymond J. Zuppa, Esq.
The Zuppa Firm PLLC
53 Herbert Street
Brooklyn, NY 11222
(646) 750-2972

**For Defendant State Farm:**

Evan H. Krinick, Esq.
Michael P. Versichelli, Esq.
Rivkin Radler LLP
926 Rexcorp Plaza
Uniondale, NY 11556-0926
(516) 357-3000

Jay Shapiro, Esq.
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022
(212) 940-6400